UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL CASACCIA,

                                        Plaintiff,                    **COMPLAINT**

        -*vs*-

CITY OF ROCHESTER,                                    Civil Case No.
ROCHESTER POLICE DEPARTMENT,
ROCHESTER POLICE SGT. KEVIN LECKINGER,
ROCHESTER POLICE OFFICER AUDREY DIPOALA,
ROCHESTER POLICE OFFICER GARY WEGMAN,
ROCHESTER POLICE OFFICER MATTHEW CUSHMAN,
ROCHESTER POLICE OFFICER JOSHUA HALL,
ROCHESTER POLICE OFFICER AMY BAUER,
RURAL/METRO CORPORATION,
ROBERT YOUNG,
and JOHN DOE,

                                        Defendants.

_____

        PLAINTIFF, Michael Casaccia, by and through his attorneys, the law firm of Easton

Thompson Kasperek Shiffrin LLP, alleges as follows:

## **INTRODUCTION**

        1.        On May 23, 2016, Mr. Casaccia was beaten by members of the Rochester

Police Department and emergency medical technicians employed by Rural/Metro

Corporation, falsely arrested and imprisoned, and subjected to malicious prosecution and

emotional distress.

2.      Now, nearly four months after the baseless criminal prosecution lodged against Mr. Casaccia ended, Mr. Casaccia continues to relive the stress and trauma of his experience on a daily basis.

3.      This action seeks to compensate Mr. Casaccia for the excessive force, false arrest, malicious prosecution, and emotional distress he endured at the hands of Defendants and the ongoing damages he continues to suffer.

## JURISDICTION

4.      This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983.

5.      This Court has supplemental jurisdiction over Mr. Casaccia's state-law claims pursuant to 28 U.S.C. § 1367(a).

6.       Mr. Casaccia has complied with the requirements of New York General Municipal Law § 50-i by making and serving a notice of claim on Corporation Counsel for the City of Rochester on August 18, 2016.  This notice was served within the time required by New York General Municipal Law § 50-e, and more than thirty days have elapsed since the service of that notice.

7.      At the request of the City of Rochester, on September 29, 2016, Mr. Casaccia submitted to a hearing pursuant to New York General Municipal Law § 50-h.

## VENUE

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York, the judicial district in which the claims arose.

## JURY DEMAND

9.      Pursuant to the Seventh Amendment of the United States Constitution, Mr. Casaccia requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

10.     Plaintiff, Michael Casaccia, is and was at all times relevant to this Complaint a citizen and resided in the County of Monroe and State of New York.

11.     Upon information and belief, Defendant City of Rochester is and was at all relevant times a municipal corporation located within the County of Monroe and State of New York.

12.     Upon information and belief, Defendant Rochester Police Department is a department within the City of Rochester, which is a municipal corporation located within the County of Monroe and State of New York.

13.     Upon information and belief, Defendant Kevin Leckinger (hereinafter "Leckinger"), is and was at all relevant times a resident of the County of Monroe and State of New York and a duly appointed police officer of the Rochester Police Department.

14.     Upon information and belief, Defendant Audrey DiPoala (hereinafter "DiPoala"), is and was at all relevant times a resident of the County of Monroe and State of

New York and a duly appointed police officer of the Rochester Police Department.

15.     Upon information and belief, Defendant Gary Wegman (hereinafter "Wegman"), is and was at all relevant times a resident of the County of Monroe and State of New York and a duly appointed police officer of the Rochester Police Department.

16.     Upon information and belief, Defendant Matthew Cushman (hereinafter "Cushman"), is and was at all relevant times a resident of the County of Monroe and State of New York and a duly appointed police officer of the Rochester Police Department.

17.     Upon information and belief, Defendant Joshua Hall (hereinafter "Hall"), is and was at all relevant times a resident of the County of Monroe and State of New York and a duly appointed police officer of the Rochester Police Department.

18.     Upon information and belief, Defendant Amy Bauer (hereinafter "Bauer"), is and was at all relevant times a resident of the County of Monroe and State of New York and a duly appointed police officer of the Rochester Police Department.

19.     Upon information and belief, Defendant Rural/Metro Corporation is a contracted ambulance service provider for the City of Rochester, which is a municipal corporation located within the County of Monroe and State of New York.

20.     Upon information and belief, Defendant Robert Young (hereinafter "Young"), is and was at all relevant times a resident of the County of Monroe and State of New York and an emergency technician and/or paramedic employed by Rural/Metro Corporation.

4

21.     Upon information and belief, Defendant John Doe is and was at all relevant times a resident of the County of Monroe and State of New York and an emergency technician and/or paramedic employed by Rural/Metro Corporation.

22.     Upon information and belief, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer were at all relevant times acting under the color of state law within the meaning of 42 U.S.C. § 1983, in the performance of their duties and under the guise and scope of their employment as police officers for the Rochester Police Department, and under the policies, customs, and usages of New York State, the City of Rochester, and the Rochester Police Department.

23.     Upon information and belief, at all relevant times, Defendants City of Rochester and Rochester Police Department are responsible and liable for the acts, omissions, and conduct of Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer toward Mr. Casaccia, and for the injuries, loss, costs, and damages suffered.

24.     Upon information and belief, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer are entitled to indemnification under New York General Municipal Law § 50-j and by contract.

25.     Upon information and belief, Defendants Young and John Doe were at all relevant times acting in the performance of their duties and under the guise and scope of their employment as emergency medical technicians and/or paramedics for Rural/Metro Corporation, and under the policies, customs, and usages of New York State, the City of

Rochester, and Rural/Metro Corporation.

26.     Upon information and belief, Defendants Young and John Doe are entitled to indemnification by contract.

## FACTS

27.     On or about May 23, 2016, at approximately 5:00 p.m., Mr. Casaccia was beaten by Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe at or near City Grill, at 384 East Avenue.

28.     384 East Avenue is in the City of Rochester, Monroe County, State of New York.

29.     Mr. Casaccia and his wife were at City Grill at the above-referenced date and time because they had learned that their daughter Megan was there and might need medical attention.

30.     When Mr. Casaccia arrived at City Grill, Megan was in the bathroom vomiting and appeared to be in and out of consciousness.

31.     Mr. Casaccia called 911 at approximately 4:15 p.m. to request an ambulance.

32.     Defendants Young and John Doe responded to Mr. Casaccia's 911 call.

33.     After briefly examining Megan in the bathroom inside City Grill, Defendants Young and John Doe told Mr. Casaccia that Megan was intoxicated and that he could take her home.

34.    Mr. Casaccia asked Defendants Young and John Doe to instead check Megan's vitals and determine whether she needed to be taken to the hospital.

35.    Defendants Young and John Doe brought Megan outside City Grill on a gurney and then into the Rural/Metro ambulance.

36.    The ambulance was parked in City Grill's parking lot, near the main entrance.

37.    Once Megan was inside the ambulance, Defendant Young and/or John Doe closed the doors to the ambulance, leaving Mr. Casaccia and his wife outside and unable to observe Defendants Young and John Doe treat Megan.

38.    Approximately five minutes later, Mr. Casaccia knocked on the back door to the ambulance.

39.    In response to the knocking, Defendant Young and/or John Doe opened the ambulance's back door so that Mr. Casaccia and his wife could see inside the ambulance.

40.    Megan appeared to still be in and out of consciousness.

41.    Defendant Young and/or John Doe performed a series of several painful sternal rubs to waken Megan.

42.    Once Megan was awake, Defendant Young and/or John Doe interrogated her about why she was at City Grill and whether she used a fake ID.

43.    Defendant Young and/or John Doe denied Megan's request for water.

44.    Defendant Young and/or John Doe forced Megan to lay down on the gurney and tried to strap her down.

7

45.     Megan started screaming in response to being forced down onto the gurney.

46.     Mr. Casaccia asked Defendant Young and/or John Doe to stop and offered to take Megan home.

47.     Defendant Young and/or John Doe told Mr. Casaccia that he could not take Megan home and that he needed to wait for the police arrive.

48.     Defendant Young and/or John Doe radioed for police assistance.

49.     Defendant Leckinger was the first officer to respond.

50.     Defendant Leckinger has testified that the Rural/Metro ambulance crew requested police assistance because they were fighting with a patient and that this was the only information known to him when he arrived at City Grill.

51.     Defendant Leckinger has testified that when he arrived at City Grill he observed the ambulance crew inside the ambulance with a female patient on a gurney, and a male and female standing outside the ambulance by its back door.

52.     The male and female Defendant Leckinger observed standing outside the ambulance by its back door were Mr. Casaccia and his wife.

53.     Defendant Leckinger has testified that as he approached the ambulance, an ambulance crew member told Defendant Leckinger, in sum and substance, that "this man [Mr. Casaccia] needs to be arrested."

54.     Upon information and belief, the ambulance crew member that told Defendant Leckinger Mr. Casaccia needed to be arrested was Defendant Young and/or John Doe .

8

55.     Defendant Leckinger has testified that he, in response to the ambulance crew member's statement that Mr. Casaccia needed to be arrested, asked Mr. Casaccia to put his hands behind his back.

56.     When Mr. Casaccia did not immediately do so and asked Defendant Leckinger what he was being arrested for, Defendant Leckinger, aided by Defendant Young and/or John Doe, grabbed Mr. Casaccia, slammed him up against the ambulance, threw two blows (punches) to his head and/or face, then slammed him onto the pavement behind the ambulance, causing Mr. Casaccia to sustain facial injuries, including road rash, abrasions, bruising, and swelling, as well as other injuries.

57.     Defendants DiPoala, Wegman, Cushman, Hall, and/or Bauer had by this point also responded to City Grill.

58.     Defendants Young, John Doe, DiPoala, Wegman, Cushman, Hall, and/or Bauer aided defendant Leckinger in slamming Mr. Casaccia onto the pavement, causing Mr. Casaccia to sustain facial injuries, including road rash, abrasions, bruising, and swelling, as well as other injuries.

59.     Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and/or John Doe held Mr. Casaccia down on the pavement so that he could not move, forced his hands behinds his back, overextended his arms, and choked Mr. Casaccia until he lost consciousness, causing injuries to his left shoulder and his right elbow and forearm, as well as other injuries.

60.     While Mr. Casaccia was on the ground, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer placed Mr. Casaccia in handcuffs.

61.     After Mr. Casaccia regained consciousness, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer lifted Mr. Casacia off the ground and placed him in the back of a patrol car.

62.     Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer took Mr. Casaccia to the police station for booking.

63.     Mr. Casaccia was held at the police station for nearly four hours before he posted $1000 bail.

64.     Defendant Leckinger filed two misdemeanor informations against Mr. Casaccia, charging him with the crimes of Obstructing Governmental Administration in the Second Degree and Resisting Arrest.

65.     Mr. Casaccia retained Easton Thompson Kasperek Shiffrin LLP to represent him on the charges.

66.     He was arraigned in Rochester City Court by Hon. Ellen M. Yacknin on May 26, 2016.

67.     Following a suppression hearing, held on July 26, 2016, at which Defendant Leckinger testified on behalf of the People, Judge Yacknin held that "Sergeant Leckinger lacked the reasonable suspicion of criminality necessary to forcibly detain [Mr. Casaccia] when he did so" and that he further lacked probable cause to arrest Mr. Casaccia (*People v*

*Casaccia*, 52 Misc 3d 1223 [Rochester City Ct 2016]).

68.     Judge Yacknin dismissed the resisting arrest charge, finding that his arrest was unlawful (*id.*).

69.     The obstructing governmental administration charge was dismissed on January 3, 2017, upon being formally abandoned by the prosecuting attorney.

70.     Upon information and belief, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer were never reprimanded, suspended, or terminated from their employment by Defendants City of Rochester or Rochester Police Department following the May 23, 2016, incident involving Mr. Casaccia.

71.     Upon information and belief, the defendant officers remain on full time active duty as Rochester police officers.

72.     Upon information and belief, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer had inadequate training and supervision regarding reasonable use of force, arrests, and filing criminal charges, which led to the constitutional and New York State law violations in this case.

73.     Upon information and belief, Defendants City of Rochester and Rochester Police Department failed to adequately train and supervise the defendant officers.

74.     Upon information and belief, Defendants City of Rochester's and Rochester Police Department's failure to properly train and/or supervise their subordinates, including but not limited to the defendant officers, amounts to a deliberate indifference to the rights of

those with whom City of Rochester and Rochester Police Department employees and officers will come into contact, including Mr. Casaccia.

75.     Upon information and belief, Defendants City of Rochester and Rochester Police Department were aware or should have been aware that their officers, including the defendant officers, require special training, procedures, policies, and customs to be used so as to not infringe upon the legal and constitutional rights of citizens, including Mr. Casaccia.

76.     Upon information and belief, Defendants City of Rochester's and Rochester Police Department's failure to promulgate and implement such procedures, policies, or customs, led to the constitutional and New York State law violations in this case.

77.     Upon information and belief, the afore-described actions, inactions, and decisions made by Defendants City of Rochester and Rochester Police Department caused the violations of Mr. Casaccia's civil rights.

78.     Upon information and belief, the policies and practices of Defendants City of Rochester and Rochester Police Department in authorizing their police officers to use excessive force, make false arrests, and file criminal charges without probable cause is so persistent and widespread that it constitutes a custom or usage and implies the actual or constructive knowledge of City of Rochester and Rochester Police Department policy-making officials.

79.     As a consequence of the afore-described May 23, 2016, incident, Mr. Casaccia suffered and continues to suffer facial injuries, injuries to his left shoulder and his right

elbow and forearm, and chronic tension headaches, together with other physical and psychological injuries.

80.     The full nature and extent of Mr. Casaccia's injuries are yet unknown.

81.     As a direct and proximate result of the intentional and/or negligent acts of Defendants, Mr. Casaccia has suffered and continues to suffer serious physical and mental injuries, pain and suffering, and other damages in an amount that will be established at trial.

82.     Mr. Casaccia is entitled to compensation for the constitutional harms and state law violations that Defendants inflicted upon him.

## FEDERAL CLAIMS

## FIRST CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983 by Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, City of Rochester, and Rochester Police Department for use of excessive force against plaintiff Michael Casaccia's person and failure to intervene**

83.     Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

84.     By grabbing Mr. Casaccia's person, slamming him up against the back of the ambulance, throwing multiple blows (punches) to Mr. Casaccia's head and/or face, and slamming Mr. Casaccia onto the pavement behind the ambulance, as well as other acts, Defendant Leckinger unlawfully used excessive force against Mr. Casaccia.

85.     The excessive force used by Defendant Leckinger violated Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable

seizures.

86.     Under the circumstances, it was not objectively reasonable for Defendant Leckinger to believe that his conduct did not violate Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

87.     By failing to intervene when Defendant Leckinger used the afore-described excessive force against Mr. Casaccia, Defendants DiPoala, Wegman, Cushman, Hall, and Bauer also violated Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

88.     As law enforcement officers, Defendants DiPoala, Wegman, Cushman, Hall, and Bauer had an affirmative duty to intervene to protect Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures from infringement by other law enforcement officers in their presence.

89.     Because Defendants DiPoala, Wegman, Cushman, Hall, and Bauer arrived at City Grill before the afore-described acts of Defendant Leckinger were completed, they had a realistic opportunity to intervene to prevent harm from occurring to Mr. Casaccia.

90.     Under the circumstances, it was not objectively reasonable for Defendants DiPoala, Wegman, Cushman, Hall, and Bauer to believe that their failure to intervene did not violate Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

91.     Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer further used unlawful excessive force against Mr. Casaccia by piling on top of Mr. Casaccia's person while he was on the ground, forcing his hands behinds his back, overextending his arms, and choking him until he lost consciousness, as well as other acts.

92.     This excessive force used by Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer violated Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

93.     Under the circumstances, it was not objectively reasonable for Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer to believe that their conduct did not violate Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

94.     By failing to intervene when Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer used the afore-described excessive force against Mr. Casaccia, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer violated Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

95.     As law enforcement officers, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer had an affirmative duty to intervene to protect Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures from infringement by other law enforcement officers in their presence.

96.     Because Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer were present when the afore-described excessive force was used against Mr. Casaccia, they had a realistic opportunity to intervene to prevent harm from occurring to Mr. Casaccia.

97.     The defendant officers performed the afore-described actions and inactions under color of state law, deliberately, intentionally, with malice or reckless disregard for the truth and Mr. Casaccia's clearly established constitutional rights, in violation of their obvious and basic duties to protect those rights, and with deliberate indifference to those rights.  No reasonable law enforcement officer in 2016 would have believed this conduct was lawful.

98.     Defendants City of Rochester and Rochester Police Department caused Mr. Casaccia to be subjected to the Fourth Amendment violations of excessive force described above because the conduct of the defendant officers was part of the customary practices of the Rochester Police Department.

99.     Defendants City of Rochester and Rochester Police Department further caused Mr. Casaccia to be subjected to the Fourth Amendment violations of excessive force described above by demonstrating supervisory indifference and tacit authorization of the defendant officers' conduct.

100.    Defendants City of Rochester and Rochester Police Department have shown a deliberate indifference to an obvious need for training of their officers, including Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, and the failure to adequately train them resulted in the defendant officers' actions and inactions that caused Mr.

16

Casaccia harm.

101.   As a direct and proximate result of the excessive use of force by these defendants, Mr. Casaccia suffered and continues to suffer serious physical and mental injuries and other damages in an amount that will be established at trial.

102.   As a direct and proximate result of these defendants' violations of Mr. Casaccia's Fourth Amendment rights, Mr. Casaccia has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. § 1983.

103.   As a direct and proximate result of these defendants' conduct, Mr. Casaccia has been compelled to retain the services of counsel to protect and enforce his rights and, therefore, Mr. Casaccia has incurred and continues to incur attorney fees, expert fees, and costs for which Mr. Casaccia is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

104.   Defendants Leckinger's, DiPoala's, Wegman's, Cushman's, Hall's, and Bauer's conduct was willful, malicious, oppressive, and/or reckless and was of such nature that Mr. Casaccia claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SECOND CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983 by Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, City of Rochester, and Rochester Police Department for false arrest and imprisonment of Michael Casaccia and failure to intervene**

105.    Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

106.    By handcuffing Mr. Casaccia, placing him in the back of a patrol car, taking him to the police station for booking, and holding him there for nearly four hours before he was able to post $1,000 bail, as well as other acts, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer falsely arrested and imprisoned Mr. Casaccia.

107.    These afore-described acts were intended to confine Mr. Casaccia, who was conscious of and did not consent to the confinement, and were not privileged.

108.    When these afore-described acts were committed, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer lacked probable cause to arrest Mr. Casaccia.

109.    The false arrest and imprisonment of Mr. Casaccia by Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer violated Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

110.    Under the circumstances, it was not objectively reasonable for Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer to believe that their conduct did not violate Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

18

111.   By failing to intervene when Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer falsely arrested and imprisoned Mr. Casaccia, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer also violated Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

112.   As law enforcement officers, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer had an affirmative duty to intervene to protect Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures from infringement by other law enforcement officers in their presence.

113.   Because Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer were all present when Mr. Casaccia was falsely arrested and imprisoned, they had a realistic opportunity to intervene to prevent harm from occurring to Mr. Casaccia.

114.   Under the circumstances, it was not objectively reasonable for Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer to believe that their failure to intervene did not violate Mr. Casaccia's clearly established Fourth Amendment right to be secure in his person from unreasonable seizures.

115.   The defendant officers performed the afore-described actions and inactions under color of state law, deliberately, intentionally, with malice or reckless disregard for the truth and Mr. Casaccia's clearly established constitutional rights, in violation of their obvious and basic duties to protect those rights, and with deliberate indifference to those rights.  No

reasonable law enforcement officer in 2016 would have believed this conduct was lawful.

116.    Defendants City of Rochester and Rochester Police Department caused Mr. Casaccia to be subjected to the Fourth Amendment violations of false arrest and imprisonment described above because the conduct of the defendant officers was part of the customary practices of the Rochester Police Department.

117.    Defendants City of Rochester and Rochester Police Department further caused Mr. Casaccia to be subjected to the Fourth Amendment violations of false arrest and imprisonment described above by demonstrating supervisory indifference and tacit authorization of the defendant officers' conduct.

118.    Defendants City of Rochester and Rochester Police Department have shown a deliberate indifference to an obvious need for training of its officers, including Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, and the failure to adequately train them resulted in the defendant officers' actions and inactions that caused Mr. Casaccia harm.

119.    As a direct and proximate result of the false arrest and imprisonment by these defendants, Mr. Casaccia suffered and continues to suffer loss of liberty, expenses, mental anguish, shame, emotional distress, humiliation, ridicule, damage to reputation, embarrassment, and other damages in an amount that will be established at trial.

120.    As a direct and proximate result of these defendants' violations of Mr. Casaccia's Fourth Amendment rights, Mr. Casaccia has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. § 1983.

121.    As a direct and proximate result of these defendants' conduct, Mr. Casaccia has been compelled to retain the services of counsel to protect and enforce his rights and, therefore, Mr. Casaccia has incurred and continues to incur attorney fees, expert fees, and costs for which Mr. Casaccia is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

122.    Defendants Leckinger's, DiPoala's, Wegman's, Cushman's, Hall's, and/or Bauer's conduct was willful, malicious, oppressive, and/or reckless and was of such nature that Mr. Casaccia claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## THIRD CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983 by Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, City of Rochester, and Rochester Police Department for malicious prosecution of Michael Casaccia and failure to intervene**

123.    Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

124.    By arresting Mr. Casaccia without probable cause then charging him with Obstructing Governmental Administration in the Second Degree and Resisting Arrest, with malice and knowing that probable cause did not exist to prosecute Mr. Casaccia for these crimes, Defendant Leckinger caused Mr. Casaccia to be maliciously prosecuted for these crimes in Rochester City Court.

125.    After charging Mr. Casaccia with these crimes, Defendant Leckinger misled the prosecuting attorney by intentionally, knowingly, and deliberately misrepresenting the truth and withholding exculpatory facts that vitiated probable cause against Mr. Casaccia; therefore, the chain of causation was not broken by the intervening actions of the prosecuting attorney.

126.    These charges were ultimately terminated in Mr. Casaccia's favor on August 31, 2016 (resisting arrest), and January 3, 2017 (obstructing governmental administration).

127.    The malicious prosecution of Mr. Casaccia by Defendant Leckinger violated Mr. Casaccia's clearly established constitutional rights under the Fourth Amendment and Fourteenth Amendments to the United States Constitution.

128.    Under the circumstances, it was not objectively reasonable for Defendant Leckinger to believe that his conduct did not violate Mr. Casaccia's clearly established constitutional rights under the Fourth and Fourteenth Amendments.

129.    By failing to intervene when Defendant Leckinger maliciously prosecuted Mr. Casaccia, Defendants DiPoala, Wegman, Cushman, Hall, and Bauer also violated Mr. Casaccia's clearly established constitutional rights under the Fourth and Fourteenth Amendments.

130.    As law enforcement officers, Defendants DiPoala, Wegman, Cushman, Hall, and Bauer had an affirmative duty to intervene to protect Mr. Casaccia's clearly established constitutional rights under the Fourth and Fourteenth Amendments from infringement by

other law enforcement officers in their presence.

131.   Because Defendants DiPoala, Wegman, Cushman, Hall, and Bauer knew that Defendant Leckinger was charging Mr. Casaccia with Obstructing Governmental Administration in the Second Degree and Resisting Arrest with malice and knowing that probable cause did not exist to prosecute Mr. Casaccia for these crimes, they had a realistic opportunity to intervene to prevent harm from occurring to Mr. Casaccia.

132.   Under the circumstances, it was not objectively reasonable for Defendants DiPoala, Wegman, Cushman, Hall, and Bauer to believe that their failure to intervene did not violate Mr. Casaccia's clearly established constitutional rights under the Fourth and Fourteenth Amendments.

133.   The defendant officers performed the afore-described actions and inactions under color of state law, deliberately, intentionally, with malice or reckless disregard for the truth and Mr. Casaccia's clearly established constitutional rights, in violation of their obvious and basic duties to protect those rights, and with deliberate indifference to those rights.  No reasonable law enforcement officer in 2016 would have believed this conduct was lawful.

134.   Defendants City of Rochester and Rochester Police Department caused Mr. Casaccia to be subjected to the malicious prosecution described above because the conduct of the defendant officers was part of the customary practices of the Rochester Police Department.

135.    Defendants City of Rochester and Rochester Police Department further caused Mr. Casaccia to be subjected to the malicious prosecution described above by demonstrating supervisory indifference and tacit authorization of the defendant officers' conduct.

136.    Defendants City of Rochester and Rochester Police Department have shown a deliberate indifference to an obvious need for training of its officers, including Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, and the failure to adequately train them resulted in the defendant officers' actions and inactions that caused Mr. Casaccia harm.

137.    As a direct and proximate result of his malicious prosecution, Mr. Casaccia suffered and continues to suffer loss of liberty, expenses, mental anguish, shame, emotional distress, humiliation, ridicule, damage to reputation, embarrassment, and other damages in an amount that will be established at trial.

138.    As a direct and proximate result of these defendants' violations of Mr. Casaccia's clearly established constitutional rights under the Fourth and Fourteenth Amendments, Mr. Casaccia has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. § 1983.

139.    As a direct and proximate result of these defendants' conduct, Mr. Casaccia has been compelled to retain the services of counsel to protect and enforce his rights and, therefore, Mr. Casaccia has incurred and continues to incur attorney fees, expert fees, and costs for which Mr. Casaccia is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

24

140.    Defendants Leckinger's, DiPoala's, Wegman's, Cushman's, Hall's, and Bauer's conduct was willful, malicious, oppressive, and/or reckless and was of such nature that Mr. Casaccia claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FOURTH CAUSE OF ACTION

### Violation of 42 U.S.C. § 1983 by Defendants City of Rochester and Rochester Police Department for failure to implement, policies, customs, and practices

141.    Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

142.    Upon information and belief, by the actions described in each of the foregoing paragraphs, Defendants City of Rochester and Rochester Police Department have demonstrated a policy, ordinance, custom, regulation, and/or decision to exhibit deliberate indifference to the rights of its citizens by:

a.    failing to adequately train its police officers, including the defendant officers, regarding the proper methods for the use of force, arrest procedures, and charging procedures;

b.    failing to adequately investigate excessive force/police misconduct complaints of citizens whose constitutional rights are violated;

c.    failing to independently investigate and refer all excessive force/police misconduct complaints of citizens to the Rochester Civilian Review Board for review;

d.    allowing the internal review of excessive force/police misconduct cases

25

to be controlled and/or influenced by the Rochester Police Department and not by an independent agency such as the Rochester Civilian Review Board;

  e. promoting and tolerating a custom and policy in which officers violate the constitutional rights of citizens through excessive force, false arrest and imprisonment, and malicious prosecution;

  f. failing to suspend, terminate, or take disciplinary action against officers who violate rights of citizens through excessive force, false arrest and imprisonment, and malicious prosecution;

  g. failing to adequately discourage further constitutional violations on the part of its police officers, for example, by requiring appropriate in-service training or retraining of officers who were known to have engaged in excessive force and/or police misconduct; and

  h. failing to adequately supervise officers who are prone to use excessive force, falsely arrest and imprison citizens, and maliciously prosecute citizens.

143. Upon information and belief, the actions of Defendants City of Rochester and Rochester Police Department were taken under color of law, constitute an official policy or custom of the City of Rochester and the Rochester Police Department, deprived Mr. Casaccia of his constitutional and statutory rights, and caused injuries and damages to his person in an amount to be determined at trial.

144. Upon information and belief, as a result of Defendants City of Rochester's and Rochester Police Department's policies and customs, Rochester police officers, including the defendant officers, believe that their actions will not be properly monitored by supervisory officers and that misconduct will not be investigated or sanctioned, but instead will be tolerated.

145. As a direct and proximate result of Defendants City of Rochester's and Rochester Police Department's policy, ordinance, custom, regulation, and/or decision to exhibit deliberate indifference, Mr. Casaccia suffered violations of his rights secured under the Fourth and Fourteenth Amendments of the United States Constitution.

146. As a direct and proximate result of Defendants City of Rochester's and Rochester Police Department's violations of Mr. Casaccia's constitutional rights, Mr. Casaccia has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. § 1983.

147. As a direct and proximate result of Defendants City of Rochester's and Rochester Police Department's policy, ordinance, custom, regulation, and/or decision to exhibit deliberate indifference, Mr. Casaccia has been compelled to retain the services of counsel to protect and enforce his rights and, therefore, Mr. Casaccia has incurred and continues to incur attorney's fees, expert fees, and costs for which Mr. Casaccia is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION

**Supervisory Liability of Defendants City of Rochester and Rochester Police Department for Violations of 42 U.S.C. § 1983 and Declaratory Judgment**

148.    Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

149.    Upon information and belief, at all relevant times, Defendants City of Rochester and Rochester Police Department have supervised Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer and are responsible for the defendant officers' retention, training, and supervision.

150.    Upon information and belief, Defendants City of Rochester and Rochester Police Department have condoned a pattern of brutality committed by Rochester police officers, including the defendant officers, and have maintained or permitted one or more of the following official policies, customs, or practices:

a.    failure to adequately train and supervise Rochester police officers regarding constitutional limitations on the use of force, arrests, and filing of criminal charges;

b.    failure to adequately discipline and retrain officers involved in misconduct;

c.    hiring, assigning/selecting, and retaining Rochester police officers with demonstrable propensities for the use of force, violence, dishonesty, and other misconduct;

d.    condoning and encouraging Rochester police officers in the belief that they can violate the rights of persons such as Mr. Casaccia with impunity, and that such

28

conduct will not adversely affect their opportunities for promotion and other employment benefits;

      e.     failure to take adequate measures to discipline Rochester police officers who engage in the use of excessive force, unlawful arrests, violence, dishonesty, and other misconduct;

      f.     failure to practice and enforce proper reporting and investigation of use of force and other misconduct by Rochester police officers;

      g.     allowing the internal review of excessive force/police misconduct cases to be controlled and/or influences by the Rochester Police Department and not by an independent agency, such as the Rochester Civilian Review Board; and

      h.     ratification by the highest levels of authority of the specific unconstitutional acts alleged in this complaint.

151.   Upon information and belief, Defendants City of Rochester and Rochester Police Department have maintained and permitted the afore-described practices, policies, and customs, were aware of widespread abuses of power and use of excessive force by Rochester police officers, including the defendant officers, and failed to take proper measures to investigate and/or discipline said officers.

152.   Upon information and belief, instead of taking proper measures to investigate and/or discipline Rochester police officers who have engaged in abuse of power and use of excessive force, Defendants City of Rochester and Rochester Police Department condoned,

encouraged, fostered and/or ratified the unlawful conduct of said officers.

153.   Upon information and belief, Defendants City of Rochester and Rochester Police Department have ratified the defendant officers' unconstitutional conduct toward Mr. Casaccia.

154.   Upon information and belief, based on the foregoing, Defendants City of Rochester and Rochester Police Department had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens, including Mr. Casaccia.

155.   Upon information and belief, Defendants City of Rochester's and Rochester Police Department's response to that knowledge was so inadequate as to show deliberate indifference to or a tacit authorization of the alleged offensive practices, and there is an affirmative causal link between Defendants City of Rochester's and Rochester Police Department's inaction and the particular constitutional injuries suffered by Mr. Casaccia.

156.   Upon information and belief, by and through custom, policy, and training, Defendants City of Rochester and Rochester Police Department had actual or constructive knowledge that their subordinates, including the defendant officers, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to its citizens, like Mr. Casaccia, and have condoned this custom, policy, and training whereby unconstitutional practices occur.

157.   Upon information and belief, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and/or Bauer had prior employment histories involving alleged misconduct and Defendants City of Rochester and Rochester Police Department were negligent in the training, supervision, and retention of those officers.

158.   Upon information and belief, despite Defendant City of Rochester's and Rochester Police Department's knowledge that their subordinates, including the defendant officers, engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Mr. Casaccia, their response to said knowledge was so inadequate as to show deliberate indifference to or a tacit authorization of the alleged offensive practices of their subordinates, including the actions of the defendant officers.

159.   Upon information and belief, there is an affirmative causal link between the afore-described culpable action and/or inaction of Defendants City of Rochester and Rochester Police Department and the particular constitutional injuries suffered by Mr. Casaccia.

160.   As a direct and proximate result of these defendants' violations of Mr. Casaccia's clearly established constitutional rights under the Fourth and Fourteenth Amendments, Mr. Casaccia has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. § 1983.

161.   As a direct and proximate result of these defendants' conduct, Mr. Casaccia has been compelled to retain the services of counsel to protect and enforce his rights and,

therefore, Mr. Casaccia has incurred and continues to incur attorney fees, expert fees, and costs for which Mr. Casaccia is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

162.     Based upon the foregoing, Mr. Casaccia also seeks a declaratory judgment declaring that his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution were violated by Defendants.

## STATE LAW CLAIMS

## <u>SEVENTH CAUSE OF ACTION</u>

### Battery

163.     Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

164.     Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe committed an intentional battery upon Mr. Casaccia's person by slamming him up against the back of the ambulance, throwing multiple blows (punches) to his head and/or face, slamming him onto the pavement behind the ambulance, piling on top of his person while he was on the ground, forcing his hands behinds his back, overextending his arms, and choking him until he lost consciousness, as well as other acts.

165.     These acts were conducted in an offensive manner and intended to cause harm and injury to Mr. Casaccia, and were committed upon Mr. Casaccia without his consent.

166.     As a direct and proximate result of the battery committed upon his person by the defendants, Mr. Casacica suffered severe and permanent physical and mental injuries and damages in an amount to be determined at trial.

167.     Defendants City of Rochester and Rochester Police Department are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, who were purporting to act or were acting in the course and scope of their employment as Rochester police officers when the alleged battery was committed upon Mr. Casaccia's person.

168.     Defendants City of Rochester and Rural/Metro Corporation are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Young and John Doe, who were purporting to act or were acting in the course and scope of their employment as Rural/Metro emergency medical technicians when the alleged battery was committed upon Mr. Casaccia's person.

169.     Defendants' actions were malicious, oppressive, reckless, wanton, and in willful disregard of Mr. Casaccia's rights, and Mr. Casaccia claims punitive damages against Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## **EIGHTH CAUSE OF ACTION**

### **Assault**

170.    Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

171.    Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe intentionally placed Mr. Casaccia in apprehension of imminent, harmful, or offensive contact when they slammed him up against the back of the ambulance, threw multiple blows (punches) to his head and/or face, slammed him onto the pavement behind the ambulance, piled on top of his person while he was on the ground, forced his hands behind his back, overextended his arms, and choked him until he lost consciousness, as well as other overt acts, words, and gestures.

172.    Defendants City of Rochester and Rochester Police Department are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, who were purporting to act or were acting in the course and scope of their employment as Rochester police officers when the alleged assault was committed upon Mr. Casaccia's person.

173.    Defendants City of Rochester and Rural/Metro Corporation are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Young and John Doe, who were purporting to act or were acting in the course

and scope of their employment as Rural/Metro emergency medical technicians when the alleged assault was committed upon Mr. Casaccia's person.

174.   As a direct and proximate result of the assault, the plaintiff suffered fear, mental anguish and emotional distress, as well as other severe and permanent injuries and damages in an amount to be determined at trial.

175.   Defendants' actions were malicious, oppressive, reckless, wanton, and in willful disregard of Mr. Casaccia's rights, and Mr. Casaccia claims punitive damages against Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## NINTH CAUSE OF ACTION

### False Arrest and Imprisonment

176.   Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

177.   The actions of Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, by threatening, assaulting, beating, seizing, handcuffing, transporting, and arresting Mr. Casaccia were intended to confine him.

178.   Upon the arrest and seizure of Mr. Casaccia, he was ultimately transported and confined in the Public Safety Building for nearly four hours.  Mr. Casaccia was aware of and did not consent to this confinement.

179.    The arrest and confinement of Mr. Casaccia was unlawful and without probable cause, and not otherwise privileged or justified.

180.    Defendants City of Rochester and Rochester Police Department are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, who were purporting to act or were acting in the course and scope of their employment as Rochester police officers when the false arrest and imprisonment was committed upon Mr. Casaccia's person.

181.    As a direct and proximate result of his false arrest and imprisonment, Mr. Casaccia suffered and continues to suffer imprisonment, loss of liberty, expenses, mental anguish, shame, emotional distress, humiliation, ridicule, damage to reputation, embarrassment, and other damages in an amount that will be established at trial.

182.    Defendants' actions were malicious, oppressive, reckless, wanton, and in willful disregard of Mr. Casaccia's rights, and Mr. Casaccia claims punitive damages against Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## TENTH CAUSE OF ACTION

### Malicious Prosecution

183.    Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

36

184.    Defendant Leckinger maliciously commenced and continued an action against Mr. Casaccia by arresting him and charging him with the crimes of Obstructing Governmental Administration in the Second Degree and Resisting Arrest in Rochester City Court.

185.    Defendant Leckinger's actions in initiating this criminal prosecution were maliciously intended to injure and harm Mr. Casaccia.

186.    After initiating this criminal prosecution, Defendant Leckinger misled the prosecuting attorney by intentionally, knowingly, and deliberately misrepresenting the truth and withholding exculpatory facts that vitiated probable cause against Mr. Casaccia; therefore, the chain of causation was not broken by the intervening actions of the prosecuting attorney.

187.    Probable cause did not exist to prosecute Mr. Casaccia for these crimes.

188.    The criminal prosecution of these charges were terminated in Mr. Casaccia's favor on August 31, 2016 (resisting arrest), and January 3, 2017 (obstructing governmental administration).

189.    Defendants City of Rochester and Rochester Police Department are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employee and/or agent, Defendant Leckinger, who was purporting to act or was acting in the course and scope of his employment as a Rochester police officer when the malicious prosecution was committed upon Mr. Casaccia.

190.     As a direct and proximate result of his malicious prosecution, Mr. Casaccia suffered and continues to suffer imprisonment, loss of liberty, expenses, mental anguish, shame, emotional distress, humiliation, ridicule, damage to reputation, embarrassment, and other damages in an amount that will be established at trial.

191.     Defendant's actions were malicious, oppressive, reckless, wanton, and in willful disregard of Mr. Casaccia's rights, and Mr. Casaccia claims punitive damages against Defendants Leckinger in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## ELEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

192.     Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

193.     The outrageous actions of Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe herein described collectively and individually constitute extreme and outrageous conduct that is utterly intolerable in a civilized community.

194.     These actions were intended to cause severe emotional distress to Mr. Casaccia, committed in reckless disregard of the probability of causing Mr. Casaccia severe emotional distress, and did cause severe and extreme emotional distress to Mr. Casaccia.

195.     As a direct and proximate result of the intentional infliction of emotional distress committed by these defendants upon Mr. Casaccia, he suffered and continues to

suffer fear, mental anguish and emotional distress, as well as other severe and permanent injuries and damages in an amount to be determined at trial.

196.    Defendants City of Rochester and Rochester Police Department are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, who were purporting to act or were acting in the course and scope of their employment as Rochester police officers when the intentional infliction of emotional distress was committed upon Mr. Casaccia's person.

197.    Defendants City of Rochester and Rural/Metro Corporation are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Young and John Doe, who were purporting to act or were acting in the course and scope of their employment as Rural/Metro emergency medical technicians when the intentional infliction of emotional distress was committed upon Mr. Casaccia's person.

198.    Defendants' actions were malicious, oppressive, reckless, wanton, and in willful disregard of Mr. Casaccia's rights, and Mr. Casaccia claims punitive damages against Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## **TWELFTH CAUSE OF ACTION**

### **Negligent Infliction of Emotional Distress**

199.   Plaintiff repeats and realleges the allegations in all of the foregoing paragraphs and incorporates them by reference as if set forth in their entirety herein.

200.   In the event that it is determined that the outrageous actions of Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe herein described did not intentionally inflict emotional distress on Mr. Casaccia, in the alternative, said Defendants' conduct amounts to negligent infliction of emotional distress.

201.   Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe owed a duty to Mr. Casaccia to use reasonable care to avoid causing him severe emotional distress.

202.   By engaging in the outrageous actions herein described, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe breached that duty of care owed to Mr. Casaccia.

203.   These actions were committed negligently and in reckless disregard of the probability of causing Mr. Casaccia severe emotional distress, and did cause severe and extreme emotional distress to Mr. Casaccia.

204.   As a direct and proximate result of the negligent infliction of emotional distress committed by these defendants upon Mr. Casaccia, he suffered and continues to suffer fear, mental anguish and emotional distress, as well as other severe and permanent injuries and

damages in an amount to be determined at trial.

205.    Defendants City of Rochester and Rochester Police Department are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, and Bauer, who were purporting to act or were acting in the course and scope of their employment as Rochester police officers when the negligent infliction of emotional distress was committed upon Mr. Casaccia's person.

206.    Defendants City of Rochester and Rural/Metro Corporation are liable under the doctrine of *Respondeat Superior* for the acts and omissions of their employees and/or agents, Defendants Young and John Doe, who were purporting to act or were acting in the course and scope of their employment as Rural/Metro emergency medical technicians when the negligent infliction of emotional distress was committed upon Mr. Casaccia's person.

207.    Defendants' actions were reckless, wanton, and in willful disregard of Mr. Casaccia's rights, and Mr. Casaccia claims punitive damages against Defendants Leckinger, DiPoala, Wegman, Cushman, Hall, Bauer, Young, and John Doe in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

**WHEREFORE**, Plaintiff Michael Casaccia prays for the following relief:

a.      that this Court award compensatory damages to Mr. Casaccia and against the defendants, jointly and severally, in an amount to be determined at trial;

b.      that the Court award punitive damages to plaintiffs, and against all

individual defendants, and in an amount to be determined at trial, that will deter such conduct by defendants in the future;

        c.      for a trial by jury;

        d.      for pre-judgment and post-judgment interest and recovery of plaintiff's costs, including reasonable attorney fees pursuant to 42 U.S.C. § 1988 for all claims arising under 42 U.S.C. § 1983, all costs available under 28 U.S.C. § 1920, and all other costs, including attorney fees, available under applicable laws; and

        e.      for any and all other relief to which plaintiff may be entitled.

        Respectfully submitted,

Dated:     Rochester, New York     /s/ Danielle C. Wild
         May 23, 2017         Danielle C. Wild, Esq.
                               Donald M. Thompson, Esq.
                               Attorneys for Plaintiff
                               Easton Thompson Kasperek Shiffrin LLP
                               16 West Main Street, Suite 243
                               Rochester, New York 14614
                               Tel: (585) 423-8290
                               dcwild@etksdefense.com
                               dmthompson@etksdefense.com