UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL CASACCIA,

                Plaintiff,

     -vs-

CITY OF ROCHESTER, et al.,

                Defendants.

**No. 6:17-cv-06323-MAT**
**DECISION AND ORDER**

---

## I. INTRODUCTION

Represented by counsel, Michael Casaccia ("Plaintiff") commenced the instant action on May 23, 2017, alleging violations of his Fourth and Fourteenth Amendment rights, as well as state law claims for battery, assault, false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress. Currently pending before the Court is a motion to dismiss filed by defendants the City of Rochester (the "City"), the Rochester Police Department (the "RPD"), Rochester Police Sergeant Kevin Leckinger ("Sergeant Leckinger"), and Rochester Police Officers Audrey DiPoala, Gary Wegman, Matthew Cushman, Joshua Hall, and Amy Bauer (collectively, the "City Defendants"). The City Defendants seek dismissal of all the claims asserted against them, arguing that: (1) Plaintiff has failed to state a claim based on municipal or supervisory liability; (2) Sergeant Leckinger had probable cause to arrest Plaintiff; (3) Plaintiff's assault and battery claims are duplicative and lack support in the record; (4) Plaintiff has failed to state a claim for intentional or negligent infliction of

emotional distress; (5) the RPD lacks the capacity to be sued; (6) the City Defendants are immune to Plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution; and (7) the City Defendants are entitled to qualified immunity. For the reasons discussed below, the City Defendants' motion is granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that around 5:00 p.m. on May 23, 2016, he and his wife arrived at the City Grill restaurant, located at 384 East Avenue in the City of Rochester, having been alerted that their daughter Megan was there and might be in need of medical assistance. (Docket No. 1 at ¶¶ 27-29). Upon arrival, Plaintiff and his wife allegedly found their daughter vomiting in the bathroom, seemingly in and out of consciousness. (*Id.* at ¶ 30). Plaintiff claims that he called 911 to request an ambulance and that Defendants Robert Young and John Doe (collectively, the "EMT Defendants"), employees of Defendant Rural/Metro Corporation ("RMC"), responded to the call. (*Id.* at ¶32). After examining Plaintiff's daughter, the EMT Defendants allegedly told Plaintiff that she was intoxicated and that he could take her home. (*Id.* at ¶ 33). According to Plaintiff, he asked the EMT Defendants to check Megan's vitals to determine if she needed to be taken to the hospital, at which time they placed Megan on a gurney and moved her from City Grill into an RMC ambulance. (*Id.* at ¶¶ 34-36). Plaintiff alleges that Megan continued to drift in and out of

consciousness while in the ambulance, and that the EMT Defendants performed a series of sternum rubs to awaken her. (*Id.* at ¶¶ 40-41). Once Megan regained consciousness, the EMT Defendants allegedly began interrogating her about why she was at City Grill and whether she used a fake ID, and denied her request for water. (*Id.* at ¶¶ 42-43). The EMT Defendants then allegedly forced Megan to lay down on the gurney and tried to strap her down, prompting her to scream. (*Id.* at ¶¶ 43-45). Plaintiff claims that he asked the EMT Defendants to stop and offered to take Megan home, but that the EMT Defendants told him he could not take Megan home and that he needed to wait for the police to arrive. (*Id.* at ¶¶ 46-47). The EMT Defendants allegedly radioed for police assistance, and Sergeant Leckinger was the first officer to arrive at City Grill. (*Id.* ¶¶ 48-49).

According to Plaintiff, Sergeant Leckinger has testified as follows regarding the incident underlying this litigation: (1) upon arriving at City Grill, the only information known to him was that the RMC ambulance crew had requested police assistance because they were fighting with a patient; (2) when he arrived at City Grill, he observed Plaintiff and his wife standing outside the ambulance by its back door, and the ambulance crew inside with a female patient on a gurney; (3) as Sergeant Leckinger approached the ambulance, an ambulance crew member told him that Plaintiff needed to be arrested; and (4) in response to the ambulance crew member's

request, Sergeant Leckinger asked Plaintiff to put his hands behind his back. (*Id*. at ¶¶ 51-55).

Plaintiff alleges that he did not immediately comply with Sergeant Leckinger's request that he place his hands behind his back, but instead asked why he was being arrested. (*Id*. at ¶ 56). According to Plaintiff, Sergeant Leckinger, aided by the EMT Defendants, then grabbed Plaintiff, slammed him against the ambulance, punched him in the head or face twice, and slammed him onto the pavement, causing him to sustain various injuries. (*Id*.). Plaintiff further alleges that Defendant RPD Officers DiPoala, Cushman, Hall, and Bauer had also responded to City Grill by this time, and that they, along with Sergeant Leckinger and the EMT Defendants, held Plaintiff down on the pavement, forced his hands behind his back (overextending his arms in the process), and choked him until he lost consciousness, thereby causing various additional injuries. (*Id*. at ¶¶ 57, 59). Plaintiff claims that one or all of Sergeant Leckinger and Officers DiPoala, Cushman, Hall, and Bauer (collectively, the "RPD Officer Defendants") handcuffed him and, after he regained consciousness, placed him in the back of a patrol car. (*Id*. at ¶¶ 60-61). Plaintiff was taken to the police station for booking, and was subsequently released on bail. (*Id*. at ¶¶ 62-63).

Plaintiff alleges that Sergeant Leckinger filed two misdemeanor informations against him, charging him with the crimes of Obstructing Governmental Administration in the Second Degree and

Resisting Arrest. (*Id.* ¶ 64). Plaintiff was arraigned in Rochester City Court on May 26, 2016, and, following a suppression hearing held on July 26, 2016, Rochester City Court Judge Ellen M. Yacknin dismissed the charge of resisting arrest, finding that Sergeant Leckinger lacked probable cause to arrest Plaintiff. (*Id.* at ¶¶ 67-68 (citing *People v Casaccia*, 52 Misc. 3d 1223(A), at *4 (City Ct. of Rochester, Aug. 31, 2016)). Plaintiff alleges that the obstruction of governmental administration charge was dismissed on January 3, 2017, upon being formally abandoned by the prosecuting attorney. (*Id.* at ¶ 69). Plaintiff further alleges that the RPD Officer Defendants were never reprimanded, suspended, or terminated as a result of the incident at City Grill. (*Id.* ¶ 70).

Plaintiff commenced the instant action on May 23, 2017. (Docket No. 1). RMC and Robert Young filed an answer on July 19, 2017, in which they denied the claims against them and asserted a cross-claim for indemnification and/or contribution against the City Defendants. (Docket No. 5).

The City Defendants filed the instant motion to dismiss on August 28, 2017, and Plaintiff filed a responsive brief on October 5, 2017. (Docket Nos. 11, 15). RMC and Mr. Young did not file a response to the instant motion, but did file an attorney affirmation noting that the claims against them are asserted only under state law and requesting that, in the event the Court decides to dismiss the federal claims against the City Defendants, it in

turn decline to exercise jurisdiction over any remaining state law claims.  (Docket No. 12).

**III. DISCUSSION**

       **A.   Legal Standard**

"To survive a motion to dismiss [made pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although a complaint need not provide "detailed factual allegations," it nevertheless must assert "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The plaintiff must plead facts that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.* (citations omitted).  For its part, the Court must accept, as true, all factual allegations in the complaint, and must draw all reasonable inferences in favor of the nonmovant.  *Atwood v. Cohen & Slamowitz LLP*, No. 17-702-CV, 2017 WL 6403506, at *1 (2d Cir. Dec. 15, 2017).

## B.   Elements of a 42 U.S.C. § 1983 Claim

Pursuant to 42 U.S.C. § 1983 ("Section 1983"), "'anyone acting under color of any [state] statute, ordinance, regulation, custom, or usage,' who causes a United States citizen to be deprived 'of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'" *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting 42 U.S.C. § 1983).   A plaintiff seeking relief under Section 1983 "must allege that (1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

## C.   Consideration of the City Defendants' Exhibits

In connection with their motion to dismiss, the City Defendants have filed a "Statement of Undisputed Facts" (which is actually a declaration by their counsel) along with several exhibits, including a copy of the RPD Incident Report from the night at issue, supporting depositions completed by Mr. Young and by City Grill employee Jasmine S. Disch, and a copy of Plaintiff's booking photograph.   (*See* Docket Nos. 11 to 11-7).   The City Defendants contend that these documents are not extraneous, are incorporated into the Complaint by reference, are documents that

are in Plaintiff's possession, or are documents of which Plaintiff had knowledge and relied on in bringing suit.

In ruling on a motion to dismiss, the Court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quotations omitted). "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Plaintiff's "mere notice or possession [of a document] is not enough" to permit the Court to consider it on a Rule 12(b)(6) motion. *Id.* (quotation omitted). Moreover, "[e]ven where a document is considered integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and that there are "no material disputed issues of fact regarding the relevance of the document." *Id.* (internal quotation marks omitted) (quoting *DiFolco*, 622 F.3d at 111; *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

Here, Plaintiff's Complaint does not append any of the City Defendants' exhibits to it, nor does it incorporate any of them by reference. The Complaint also does not heavily rely upon these documents in its drafting or for their terms and effect. To the

contrary, Plaintiff's Complaint clearly disputes the accuracy of the exhibits, which purport to describe the events surrounding Plaintiff's arrest and serve as the basis for the declaration by the City Defendants' counsel. Accordingly, the City Defendants' exhibits, and counsel's declaration made in reliance thereon, do not fall within the narrow universe of materials that are considered upon a motion to dismiss. As such, in deciding the instant motion, the Court has not relied upon the City Defendants' exhibits for the truth of the matters asserted therein.

### D. Capacity of the RPD to Sue or Be Sued

As a threshold matter, the City Defendants contend that Plaintiff cannot sue the RPD because it is merely an administrative arm of the City and does not have a legal identity separate and apart from it. Plaintiff has failed to respond to this argument in his opposition papers.

Pursuant to Federal Rule of Civil Procedure 17(b)(3), the capacity of local law enforcement agencies to sue or be sued is determined by reference to New York law. "Under New York law, departments which are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot sue or be sued," *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 302 (S.D.N.Y. 2007), and "[a] police department is an administrative arm of the municipal corporation." *Nix v. City of Rochester*, No. 6:14-CV-06395(MAT), 2017 WL 3387103, at *8 (W.D.N.Y. Aug. 5, 2017). The City Defendants are correct that the RPD, which

is an administrative arm of the City and lacks the capacity to sue or be sued, is not a proper defendant in this matter. As such, the City Defendants' motion to dismiss is granted as to all claims against the RPD, and the Clerk of the Court is instructed to dismiss the RPD as a defendant in this matter.

### E.    Municipal and Supervisory Liability

Plaintiff's fourth and sixth causes of action purport to assert Section 1983 claims against the City and the RPD based on the theories of municipal and supervisory liability. The City Defendants contend that Plaintiff has failed to state a claim based on either municipal or supervisory liability, arguing that his allegations are conclusory and that, as a matter of law, the City cannot be held liable for any alleged deficiencies in hiring, training, or retaining the RPD Officer Defendants. The Court will consider the City Defendants' arguments separately with regard to the theories of municipal liability and supervisory liability.

### 1.    Municipal Liability

"[M]unicipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). As established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality may be found liable under Section 1983 where a constitutional violation

occurs and: (1) a formal policy that is officially endorsed by the municipality causes the alleged violation; (2) municipal officials with final decision making authority take actions or make decisions causing the alleged violation; (3) "a practice [is] so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials"; or (4) policymaking officials fail to "properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Hall v. Town of Brighton*, No. 13-CV-6155T, 2014 WL 340106, at *5 (W.D.N.Y. Jan. 30, 2014) (quoting *Bliven v. Hunt*, 478 F. Supp.2d 332, 336-37 (E.D.N.Y. 2007)).

Here, Plaintiff's Complaint alleges sufficient factual matter, accepted as true, to state a claim against the City under *Monell*. In particular, Plaintiff's allegations that (1) the City had a policy and custom of failing to investigate police misconduct complaints or to refer such complaints to the Rochester Civilian Review Board (the "RCRB")[1]; (2) the City improperly permitted the RPD to control and influence the processing of police misconduct cases, rather than allowing the RCRB to function independently; and (3) the City's policy and custom of failing to properly investigate

---

[1]    The RCRB is a voluntary body, run under the auspices of the Center for Dispute Settlement, that "review[s] and make recommendations on completed internal affairs investigations of alleged misconduct by employees of the Rochester Police Department." *City of Rochester*, Rochester Civilian Review Board, available online at http://www.cityofrochester.gov/CivilianReviewBoard/ (last visited January 2, 2018).

or process police misconduct complaints amounts to deliberate indifference are specific factual allegations that, if proven to be true, could potentially support the imposition of liability on the City. *See, e.g., Iqbal*, 556 U.S. at 678. Accordingly, to the extent that the City Defendants' seek dismissal of Plaintiff's fourth cause of action in its entirety, that request is denied.

The City Defendants have also argued, in the alternative, that Plaintiff's claims against the City must be dismissed to the extent that they are based on allegedly negligent hiring, training, or retention, because the City does not contest that the RPD Officer Defendants were acting within the scope of their employment at all relevant times. This argument is misplaced. The case on which the City Defendants rely for this contention, *Rowley v. City of New York*, 2005 WL 2429514 (S.D.N.Y. Sept. 30, 2005) was expressly considering whether a claim for negligent hiring or supervision could proceed under New York State law where the employer conceded that the challenged actions were taken in the scope of employment. *Id*. at *12. The *Rowley* court concluded that such claims were not cognizable because, again under New York State law, "[w]here an employee acts within the scope of his or her employment, the employer generally is held liable for all the employees' torts under the doctrine of respondeat superior." *Id.; see also Bleiwas v. City of New York,* No. 15 CIV. 10046 (ER), 2017 WL 3524679, at *10 (S.D.N.Y. Aug. 15, 2017) (noting that *Rowley* stands for the proposition that "New York law does not permit a claim for

negligent hiring, screening, retention, supervision, and training where defendants act within the scope of their employment.") (emphasis added and citation omitted). The *Rowley* decision was addressing the specific issue of New York State law common law claims for negligent hiring and supervision, and did not address the issue of municipal liability under Section 1983 and *Monell*. Moreover, the analysis in *Rowley* is inapplicable to Section 1983 claims, because it is based on the doctrine of *respondeat superior* and "*[r]espondeat superior* . . . liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)

Contrary to the City Defendants' arguments, the *Rowley* court did not hold that a failure to train or supervise is not cognizable under Section 1983 (as opposed to New York State law) where the individual defendants were acting within the scope of their employment. *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465(S.D.N.Y. 2015), which the City Defendants have also cited, illustrates the importance of this distinction. In that case, the court cited *Rowley* and acknowledged that "New York law does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." *Id*. at 521-22. However, the *Schoolcraft* court also separately considered whether municipal liability existed as to the plaintiff's federal claims, acknowledging that "[a] municipality may . . . be liable under *Monell* where the Plaintiff demonstrates a failure to train or supervise that amounts to deliberate

indifference to the rights of those with whom the municipality's employees interact." *Id*. at 517 (quotation omitted). In other words, the *Schoolcraft* decision illustrates that the proposition set forth in *Rowley* (that is, that a claim for negligent hiring, training, retention or supervision is not cognizable where the defendants act in the scope of their employment) applies to state common law claims, and not to an analysis of potential municipal liability under *Monell*. Accordingly, the City Defendants' argument that Plaintiff's <u>federal</u> claims against the City must be dismissed as a matter of law to the extent they are based on allegedly negligent hiring, training, and supervision is without merit.

## 2. Supervisory Liability

Plaintiff's sixth cause of action purports to assert Section 1983 claims against the City of Rochester and the RPD based on the theory of supervisory liability. The City Defendants seek dismissal of this claim, noting that Plaintiff has alleged no personal involvement of any City official or policymaker.

Under Section 1983, supervisory liability attaches where a "Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. By definition, the theory of supervisory liability applies only where a plaintiff seeks to hold an <u>individual</u> supervisory official liable for an alleged constitutional violation. As the City Defendants correctly note, Plaintiff has not identified (or named as a defendant) any individual City

official or policymaker who was allegedly involved in the claimed deprivation of his rights.  As such, the City Defendants' motion is granted to the extent it seeks dismissal of Plaintiff's sixth cause of action.

### F. False Arrest and Imprisonment

The City Defendants devote a significant portion of their motion papers to arguing that Sergeant Leckinger had probable cause to arrest Plaintiff.  Although the City Defendants do not specify which of Plaintiff's claims they seek dismissal of on this basis, it appears that they are arguing that Plaintiff cannot maintain claims of false arrest and imprisonment due to the existence of probable cause.  This argument lacks merit.

The Second Circuit has explained that "[t]he common law tort of false arrest is a species of false imprisonment." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  "Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Id.* (quoting *Broughton v. State*, 373 N.Y.S.2d 87, 93 (1975)).  "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."  *Id.* (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). An officer has probable cause to arrest a person if he has  "knowledge or reasonably trustworthy information of

facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). "Probable cause to arrest may exist even if the arresting officers do not possess firsthand knowledge of the suspect's alleged criminal activity." *Watkins v. Ruscitto*, No. 14 CIV. 7504 (AJP), 2016 WL 3748498, at *6 (S.D.N.Y. July 11, 2016).

The City Defendants contend that Sergeant Leckinger had probable cause to arrest Plaintiff because an ambulance crew member told Sergeant Leckinger that Plaintiff was interfering with the ability to render care to his daughter and because Sergeant Leckinger personally observed Plaintiff yelling at ambulance crew members and attempting to climb inside the ambulance. The City Defendants' argument is fatally flawed because it relies upon alleged facts that are outside the four corners of and directly contradicted by the contents of the Complaint. Plaintiff's Complaint specifically alleges that the ambulance crew member told Sergeant Leckinger to arrest Plaintiff without further explanation, and makes no mention whatsoever of any yelling by Plaintiff or attempts to enter the ambulance. As discussed at length above, on a motion to dismiss, this Court cannot and will not accept the truth of the statements set forth in the City Defendants' exhibits.

The fact that Rochester City Court Judge Yacknin expressly found that Sergeant Leckinger lacked probable cause to arrest

Plaintiff is undisputed and further supports the Court's conclusion. Notably, the City Defendants fail to discuss the Rochester City Court decision in their moving papers. Under the circumstances of this case, the Court simply cannot conclude as a matter of law that Sergeant Leckinger had probable cause to arrest Plaintiff, nor can it dismiss any of Plaintiff's claims on this basis.

### G. Assault and Battery

The City Defendants have also made a cursory argument that Plaintiff's state law claims for assault and battery are duplicative and without support in the record. In particular, the City Defendants contend that the assault and battery claims are evaluated under the same standard as a Fourth Amendment excessive force claim, and should be dismissed for the same reasons as Plaintiff's Section 1983 claims.

To the extent the City Defendants are arguing that state law assault and battery claims cannot be asserted in tandem with a Fourth Amendment excessive force claim, they are incorrect. Although state law assault and battery claims are "substantially identical" to excessive force claims, they are not duplicative because an excessive force claim under Section 1983 has the additional requirement that it "be committed under color of state law." *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)). Accordingly, it is well-established that a plaintiff may pursue a Fourth Amendment excessive force claim and state law assault and

17

batter claims in the same action. *See, e.g., Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 439 (S.D.N.Y. 2015); *LaLonde v. Bates*, 166 F. Supp. 2d 713, 719 (N.D.N.Y. 2001).

The Court is further unpersuaded by the City Defendants' contention that Plaintiff's assault and battery claims lack factual support. Plaintiff alleges that Sergeant Leckinger pushed him into an ambulance, punched him in the face and head, and slammed him into the pavement. He further alleges that the RPD Officer Defendants held him on the ground, overextended his arms, and choked him into unconsciousness. Under New York law, "[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001). In this case, as discussed above, the Court is unable to determine at this state of the proceedings that Sergeant Leckinger had probable cause to arrest Plaintiff or that the arrest was lawful. As such, and accepting the allegations in the Complaint as true, as the Court must on a motion to dismiss, there is no basis to dismiss Plaintiff's state law assault and battery claims.

### H. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

The City Defendants seek dismissal of Plaintiff's claims for intentional infliction of emotional distress and negligent

infliction of emotional distress, arguing that an intentional infliction of emotional distress claim will not lie where traditional tort remedies are available and that a negligent infliction of emotional distress claim may not be premised on intentional conduct. The Court agrees with the City Defendants that these claims are subject to dismissal.

### 1. Intentional Infliction of Emotional Distress

"Under New York law, intentional infliction of emotional distress requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Warr v. Liberatore*, No. 6:13-CV-06508 EAW, 2017 WL 3872491, at *11 (W.D.N.Y. Sept. 5, 2017) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)). A claim for intentional infliction of emotional distress "is generally unavailable where other traditional tort remedies are available." *Id*. at *11 (citation omitted); *see also Naccarato v. Scarselli*, 124 F. Supp.2d 36, 44 (N.D.N.Y. 2000) ("In New York, intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort, when traditional tort remedies are unavailable. Accordingly, [n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.") (internal citations and quotations omitted).

Here, because the traditional torts of false arrest, malicious prosecution, and battery encompass the conduct Plaintiff complains of, Plaintiff's claim for intentional infliction of emotional distress must be dismissed. *See Naccarato*, 124 F. Supp.2d at 44 ("In the instant case, since the conduct complained of [is] encompassed in plaintiff's claims for assault and battery and malicious prosecution, plaintiff's claim for intentional infliction of emotional distress must be dismissed.").

## 2. Negligent Infliction of Emotional Distress

Turning to Plaintiff's claim for negligent infliction of emotional distress, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Id.* at 45 (citations omitted); *see also Warr,* 2017 WL 3872491 at *12 ("Under New York law, [w]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.") (quotation omitted). In this case, the conduct that gives rise to Plaintiff's excessive force and assault and battery claims is also the conduct on which his negligent infliction of emotional distress claim relies, and that claim therefore must be dismissed.

## I. Immunity from State Law Claims of False Arrest and Imprisonment, and Malicious Prosecution

With respect to Plaintiff's state law claims of false arrest and imprisonment and malicious prosecution, the City Defendants argue that the City and the RPD are immune from Plaintiff's state law claims of false arrest and imprisonment and malicious prosecution, because they are based on discretionary acts of police officers that were not inconsistent with acceptable police practice. Because the Court has already dismissed all claims against the RPD, the Court will only address whether claims against the City should be dismissed based on the City's alleged immunity from these state law claims.

"Eleventh Amendment sovereign immunity does not apply to municipal actors, and Plaintiff's claims are based on state law. Thus, the City's immunity, if any, would arise only by operation of state law." *Williams v. City of New York*, 121 F. Supp. 3d 354, 375-76 (S.D.N.Y. 2015) (citing *Monell*, 436 U.S. at 690 n.54). "[M]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago." *Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012).

However, "[a]lthough New York State has waived sovereign immunity on behalf of itself and its municipal subdivisions, 'the common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of government functions.'" *Denis v. Town of*

*Haverstraw*, 852 F. Supp. 2d 405, 410 (S.D.N.Y. 2012) (quoting *Valdez v. City of New York*, 18 N.Y.3d 69, 75-6 (2011)). The common-law doctrine of governmental immunity applies only to negligence claims and does not preclude a plaintiff from pursuing "the traditional intentional tort remedies of false arrest, false imprisonment, and malicious prosecution." *Sullivan v. Lakeram*, No. 13 CIV. 7677 (NRB), 2016 WL 4097856, at *4 (S.D.N.Y. July 28, 2016); *see also Williams v. City of New York*, 121 F. Supp. 3d 354, 376 (S.D.N.Y. 2015) (explaining that "the 'discretionary act' [immunity] line of decisions . . . all discuss whether municipalities may be held liable for *negligent* acts of [their] employees given the State's waiver of immunity" and that "[u]nder New York law, the City, just like any other private entity, is answerable for the conduct of its officers who commit common-law torts, such as assault and false imprisonment, when they are acting in the course of their employment.") (internal quotations omitted and emphasis in original).

Here, the sole negligence-based claim asserted by Plaintiff is one for negligent infliction of emotional distress, and the Court has already determined that this cause of action must be dismissed, as discussed above. With respect to Plaintiff's intentional tort claims for false arrest and imprisonment and malicious prosecution, the "discretionary act" immunity asserted by the City Defendants simply does not apply to these causes of action, and dismissal is not warranted on this basis.

## J.   Qualified Immunity

The City Defendants' final argument is that the RPD Officer Defendants are entitled to qualified immunity with respect to all of Plaintiff's claims, because they justifiably arrested Plaintiff and used an appropriate amount of force against him. The Court finds, for the reasons discussed below, that the RPD Officer Defendants are not entitled to dismissal on the basis of qualified immunity.

"A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001). "A right is considered to be 'clearly established' if 'the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although "a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, 'that defense faces a formidable hurdle when advanced on such a motion.'" *Moore v. Newton*, 220 F. Supp. 3d 275, 288 (E.D.N.Y. 2016) (quoting *McKenna v. Wright*, 386 F.3d 432, 433 (2d Cir. 2004)). In the context of a Rule 12(b)(6) motion, the facts supporting the defense of qualified immunity must appear on the

face of the complaint. *See Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015). "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

Here, the Complaint sets forth plausible factual allegations that the RPD Officer Defendants arrested Plaintiff without probable cause and used excessive force in executing their arrest. *(See, e.g.*, Docket No. 1 at ¶¶ 50-61, 67-68). Although the City Defendants have submitted exhibits to the Court that they contend demonstrate the existence of probable cause as a matter of law, as discussed above, the content of those exhibits may not properly be considered by the Court on a motion to dismiss. Instead, the Court is limited to the facts set forth in the Complaint. Based on those facts, and at this early stage of the proceedings, the Court cannot determine that the RPD Officer Defendants are entitled to qualified immunity as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, the City Defendants' motion to dismiss (Docket No. 11) is granted in part and denied in part. Specifically, (1) the motion is granted with respect to all of Plaintiff's claims against the RPD, (2) Plaintiff's claims against the City based on the theory of supervisory liability are dismissed, and (3) Plaintiff's state law claims for intentional and negligent infliction of emotional distress are dismissed. The

City Defendants' motion is denied in all other respects.  The Clerk of the Court is directed to terminate the Rochester Police Department as a named defendant in this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
_____
   HON. MICHAEL A. TELESCA
United States District Judge

Dated:    January 8, 2018
          Rochester, New York