UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

MICHAEL CASACCIA

Plaintiff,

v.

CITY OF ROCHESTER, et al

Defendants.

CITY DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Civil Action No.:
6:17-cv-06323-MAT

1. Plaintiff filed his Complaint alleging various state and federal causes of action resulting from his arrest on May 23, 2016. See Exhibit A.

2. The City of Rochester timely filed a motion to dismiss. See Docket 11.

3. By Decision and Order dated January 8, 2018 the Court granted Defendants' motion, in part, and denied Defendants' motion in part. See Docket 17.

4. Per the Court's Order, City Defendants interposed their Answers on April 12, 2019 denying all allegations and asserting various affirmative defenses. See Docket 28.

5. Plaintiff's underage daughter was drunk and passed out on the bathroom floor of City Grill Bar and Restaurant in Rochester, New York. She required emergency care and was placed in a Rural Metro ambulance for treatment.

6. Plaintiff arrived on scene just in time to witness his highly intoxicated and semi-coherent daughter instructing the EMT on how best to render care to her.

7. When the ambulance technician, Robert Young, instructed Plaintiff's daughter to be silent and stop moving, Plaintiff, watching from the back of the ambulance, became enraged and began shouting profanities at Mr. Young and tried to enter the ambulance to remove his daughter. These facts are captured on video. See Cellphone video, Exhibit B.

8. Robert Young called 911 to get emergency assistance due to Plaintiff's threatening behavior.

9. The 911 call reports that a man is fighting with the ambulance crew. See ECD/911 Report, Exhibit C.

10. Upon arrival at the scene, ambulance crew members told Sgt. Kevin Leckinger that Plaintiff had been interfering with their ability to render treatment and should be arrested. See, Exhibit D, Subject Resistance Report.

11. When Sgt. Leckinger arrived on scene, Plaintiff appeared to be trying to enter the ambulance and the ambulance crew was instructing him to move away. At that point, Plaintiff was told he was under arrest, but he actively resisted. See Exhibit E, RPD Incident Report.

12. Plaintiff was repeatedly told to place his hands behind his back and responded by saying “no”. As Sgt. Leckinger attempted to take hold of Plaintiff’s arm he pulled away and assumed a fighting position. After a standing struggle, Plaintiff was taken to the ground where Sgt. Leckinger landed on top of Plaintiff with his (Sgt. Leckinger) arm pinned underneath Plaintiff. Shortly thereafter Officer Cushman arrived and was able to handcuff Plaintiff. See Exhibit D, Subject Resistance Report.

13. Plaintiff was arrested for Obstruction of Governmental Administration and Resisting Arrest after members of an ambulance crew called Rochester Police to assist with Plaintiff, who was yelling at ambulance members and attempting to enter the rear of their ambulance. Exhibit E.

14. The incident was witnessed by both the ambulance driver and an employee who worked at the incident address. They stated the following:

*“My name is Jamine Disch, I am 29 years old, I am the Director of Sales and Events at 384 East Avenue. On 5/23/16 shortly after 5:00 p.m., police and ambulance responded to assist an intoxicated girl. The girl’s parents also came. When the ambulance arrived, the girl’s dad began arguing and being aggressive with the ambulance crew (another staff member told me this). Shortly after that police arrived. When police arrived, I saw a group of men arguing and began fighting (3 police officers and the intoxicated girl’s dad). I later learned the girl’s dad is Michael Casaccia. The fight lasted a couple of minutes. During the fight, the police were holding him on the ground trying to handcuff him. Police were telling him to stop and calm down and the dad was just arguing with them. The police got the dad handcuffed and picked the dad up off the ground and put him in the car. After the fight with the dad, the intoxicated girl’s mom pulled on Sgt. Leckinger’s shirt trying to pull him away, so he arrested her too.”* See Exhibit F, RPD Deposition of Jasmine Disch.

*“My name is Robert Young and I am employed with Rural Metro. On today’s date 5/23/16 at around 4:16 p.m. I responded to 384 East Avenue, Rochester NY for the report of an intoxicated female vomiting inside the bar bathroom (City Grill). When we got to the bar we came into contact with the intoxicated female who was now accompanied by her mother and father. I, along with my partner, loaded the female into our ambulance and began attempting to get vitals on her to find out how to best treat her. While helping the female she became extremely belligerent and flailing her arms to push me away. As she flailed her arms her dad became increasingly hostile and he called for police assistance to arrive as soon as possible. Shortly after calling for police an officer arrived, who I later learned to be Sgt. Leckinger. As soon as he arrived I told him that the father, who was now trying to get into*

*my ambulance to get his daughter out, needed to be controlled and that he was interfering with our attempts to treat his daughter. The officer told the father to put his hands behind his back and the father again said "NO". The father then turned away from the officer as he tried taking his wrist and turned face to face with the officer. I thought he was going to start fighting the officer. The father then flailed his arms and pulled away from the officer at that then the officer took him to the ground and other officers showed up to help him handcuff the father."* See Exhibit G, RPD Deposition of Robert Young. .

15. Jasmine Disch, now Jasmine Watson (married), testified under oath that the above-referenced RPD Deposition is an accurate reflection of her memory of events on the day in question. Exhibit H, Deposition of Jasmin Watson dated September 23, 2019, pgs. 60:13-25, 61:1-5.

16. Furthermore, Jasmine Watson testified as follows concerning police interaction with Plaintiff:

Q. And what happened when that first (police) car arrived?
A. He pulled in. He got out. He ran over to the situation.
Q. And when you say he ran over, what did he do when he ran over?
A. He went to stop this man from yelling into the ambulance. Exhibit H, pg. 18:9-16

____

Q. And did he touch the father?
A. I don't know if it was immediate, but eventually, yes, he grabbed -- he grabbed the father to remove him. Ex. H, pg. 19:5-8.

____

Q. Was it just the one officer who took him to the ground without the other officer's assistance?
A. Yeah. Ex. H, pg. 21:10:13.

_____

Q. Did you ever see -- other than the officers you indicated that took him to the ground, did you ever see any of the officers strike the gentleman at all with their fist?
A. I did not.
Q. Did you ever see them strike the gentleman with any object?
A. I did not.
Q. Did you see anyone kick the gentleman?
A. No.
Q. Okay. Did you see anyone kick or strike the woman who you believed to be his wife at any point in time?
A. No. Exhibit H, pgs. 57-58.

____

Q. A couple times counsel said when this gentleman was taken to the ground. What do you mean by that when you hear the term taken to the ground?

A. Well, if he was resisting arrest or not listening to an officer and what they're asking him to do and flailing his arms or fighting back, they have to actually physically handle him.
Q. Okay. Is that what you observed?
A. Yes. Q. Okay. So from what you viewed, you got the impression that the gentleman was resisting the police officer's efforts?
A. Yes Ex. H, pg. 39:3-18.

____

Q. All right. And did you observe something happening that led you to believe the police should be called?
A. I briefly witnessed him yelling into the back of the ambulance. Ex. H, pg. 40:2-6.

____

Q. Just one follow-up on that. In terms of the physical contact between the father and the officer, how would you describe -- would you describe that as a struggle? You don't know the specifics about running or pushing –
A. Yeah.
Q. -- but would you describe that as a struggle?
A. Yes.
Q. Okay. And when you say struggle, what did you observe generally?
A. There was a point when the officer had to put his hands on this man where he wasn't listening verbally. Ex. H, pgs. 63:22-25, 64:1-13.

17. Defendants responded to Plaintiff's second set of interrogatories. These responses contained multiple documents demanded. See Exhibit I.

18. All relevant discovery is complete. All discovery related to the subject arrest and force has been completed. Defendants' motion to bifurcate (Docket 47) asserts that Monnell discovery is unnecessary in light of the evidence in the current record, which is sufficient to determine whether there are any issues of fact concerning individual liability.

DATED: October 29, 2019

TIMOTHY R. CURTIN, CORPORATION COUNSEL

s/Spencer L. Ash

BY: SPENCER L. ASH, ESQ, of Counsel
*Attorneys for Defendant*
City Hall Room 400A, 30 Church Street
Rochester, New York 14614
(585) 428-6699