UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL CASACCIA and
MARYBETH CASACCIA,                              DECISION AND ORDER

vs.                                             17-CV-6323 MAT/MJP

CITY OF ROCHESTER, et al.,

_____

**Pedersen, M.J.** Before the Court are Plaintiffs' motion to compel production of documents, to compel City defendants[1] to designate a Rule 30(b)(6) witness, to sanction City Defendants for discovery misconduct, and to modify the scheduling order. (Notice of Motion to Compel, Aug. 26, 2019, ECF No. 45.) Also pending is an application by certain defendants represented by Spencer L. Ash, Esq., to sever *Monell*[2] discovery. (Notice of Motion, Aug. 29, 2019, ECF No. 47.) The Court heard oral argument on the motions on February 13, 2020, and now issues its decision. The Court must first decide the defense motion to sever the *Monell* discovery, as that will impact on Plaintiffs' motion to compel.[3]

---

[1] In his Decision and Order of January 8, 2018 (ECF No. 17), the Hon. Michael A. Telesca grouped the following defendants together under the heading of the City Defendants: The City of Rochester, the Rochester Police Department, Rochester Police Sergeant Kevin Leckinger, and Rochester Police Officers Audrey DiPoala, Gary Wegman, Matthew Cushman, Joshua Hall, and Amy Bauer. The Rochester Police Department was terminated as a named defendant. The Court will employ the same heading for the City defendants here.

[2] *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658 (1978).

[3] The Rural Metro defendants (consisting of Rural/Metro Corporation, Robert Young, and John Doe) have stated they are not impacted by the motion to compel and those defendants have taken no position on that application. They do support the motion to bifurcate. (Naylon Aff. ¶ 3, Aug. 30, 2019, ECF No. 48.) The Rural Metro defendants, however, pose no objection to Plaintiff's counsel's proposal to extend the discovery deadlines

# PROCEDURAL BACKGROUND

This matter is before the Court on City Defendants' motion to bifurcate (ECF No. 47) and Plaintiffs' Second Motion to Compel (ECF. 45.) The parties appeared before this Court for oral argument on February 13, 2020.

By way of background, this matter was originally referred to the Hon. Jonathan W. Feldman and then was referred to the undersigned upon Judge Feldman's retirement in November 2019. The City of Rochester filed a motion to dismiss (ECF No. 11) which was granted and denied in part by United States District Judge Michael A. Telesca. Judge Telesca granted the motion to dismiss with respect to all of Plaintiffs' claims against the Rochester Police Department and dismissed Plaintiffs' claims against the City of Rochester that were based on a theory of supervisory liability as well as Plaintiffs' state law claims for intentional and negligent infliction of emotional distress.

Judge Feldman issued a scheduling order (ECF No. 22) after he held a scheduling conference on July 25, 2018. Plaintiffs' counsel, Elliott Shields, Esq., filed a motion for extension of discovery deadlines as well as a motion to opt out of the mediation program. (ECF No. 26.) Shortly thereafter, he filed an amended complaint (ECF No. 29).

City Defendants then filed a motion to dismiss on April 15, 2019 (ECF No. 30), the same day that an unsuccessful mediation was held before Steven V. Modica, Esq. (ECF No. 31.) Shortly thereafter, Plaintiff filed a motion to strike City Defendants'

---

and implied that two of Plaintiff's witnesses were uncooperative with a process server. (*Id.* ¶ 11.)

answer as well as a motion for sanctions, a modification of the scheduling order, and seeking attorney's fees. (ECF No. 32.) On May 16, 2019, Spencer Ash, Esq., filed objections to the Plaintiffs' motions via his letter to the Court (ECF No. 38), and filed a separate response on the same day. Judge Telesca issued his decision and order (ECF No. 43) on August 15, 2019, in which he denied City Defendants' motion to dismiss the amended complaint as moot and denied Plaintiffs' request to amend their complaint. Additionally, Judge Telesca granted Plaintiffs' motion to strike City Defendants' answer and granted them leave to re-file their answer. Judge Telesca also denied Plaintiffs' motion for sanctions. Of note, Judge Telesca in his decision and order stated,

> very little progress has been made to move the case towards a resolution or trial. The parties are on notice that failure to move the case forward in compliance with the above-mentioned deadlines may result in the Court's issuance of an Order to Show Cause as to why the case should not be dismissed for failure to prosecute.

(*Id.* at 39.)

On August 26, 2019, Plaintiff filed a second motion to compel discovery (ECF No. 45) and a motion to expedite the hearing of their second motion to compel (ECF No. 46). Subsequently, City Defendants filed a Motion to Bifurcate (ECF No. 47). On September 6, 2019, Judge Feldman held a status conference with the parties and issued an order (ECF No. 52), in which he denied Plaintiffs' motion to expedite and directed the parties to review his previous decisions with regard to motions to compel personnel records. Judge Feldman stated in his decision that "the Court's position generally is that if the records pertain to similar conduct as is set forth in the complaint or are relevant to the defendant's truth or veracity, they must be provided."

3

(*Id.* at 2.) Judge Feldman further directed that City Defendants' Motion to Bifurcate would be heard before Judge Telesca. The parties briefed the motion to bifurcate and shortly thereafter, City Defendants filed a motion for summary judgment on October 29, 2019 (ECF No. 58), to which Plaintiff emailed the Court a letter requesting that Plaintiff not be required to respond to the motion for summary judgment and that the Court impose discovery sanctions. Notwithstanding the improper method of requesting leave of the Court, Judge Telesca denied Plaintiffs' requests (ECF No. 59) and advised Plaintiffs' counsel that if he "disregards the Court's scheduling order, it is at his and his clients' peril." (*Id.*)

City Defendants filed a status report on November 19, 2019, with the Court (ECF No. 62) in which they contended that "it is the City Defendants' position that pending an order from the Court ordering *Monell* discovery, all relevant discovery has been completed and there is sufficient proof in the record to decide the summary judgment motion." (*Id.*) On December 12, 2019, the motion for summary judgment was submitted to the Court without oral argument.

On January 24, 2020, Judge Telesca directed by text order (ECF No. 69), that the motion to bifurcate (ECF No. 47) and the second motion to compel City Defendants to provide discovery (ECF No. 45) would both be referred to the undersigned for adjudication.

### MOTION TO BIFURCATE THE *MONELL* DISCOVERY

The Court may grant a motion to bifurcate discovery "'[f]or convenience, to avoid prejudice, or to expedite and economize.'" *Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL), 2016 WL 207677, *1 (E.D.N.Y. Jan. 12, 2016)

4

(quoting *Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 2402577, at *6 (S.D.N.Y. June 26, 2012)). Generally, it is presumed that all claims will be resolved at a single trial:

> In actions at law the general practice is to try all the issues in a case at one time; and it is only in exceptional instances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials. Whether this reasonably may be done in any particular instance rests largely in the court's discretion.

*Miller v. Am. Bonding Co*, 257 U.S. 304, 308 (1921); *accord Altman v. New Rochelle Pub. School Dist.*, 2017 WL 66326 (S.D.N.Y. Jan. 6, 2017) (citing *Miller* in denying bifurcation). In determining whether to bifurcate, a court may consider,

> (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

*Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001), *opinion modified on denial of reconsideration,* No. 95 CIV. 9076 (LTS) (RL, 2002 WL 1013291 (S.D.N.Y. May 20, 2002).

City Defendants' motion argues that "[t]his case is frivolous, and before the City of Rochester is tied up in lengthy and burdensome *Monell* discovery, the Court should first decide whether there is sufficient evidence on summary judgment to proceed against the individual officers." (City Def.s' Mem. of Law 2, Aug. 29, 2019, ECF No. 47-8.) In contrast, Plaintiff argues that *Monell* liability here is not dependent on a finding that individual officers violated Plaintiffs' rights. The Second Circuit has held on this issue that:

5

> It does not follow, however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality. It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality. In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.

*Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). The complaint sufficiently alleges that one or more of the municipal actors committed a constitutional tort against Plaintiff. Further, in his Decision and Order of January 8, 2018, (ECF No. 17), Judge Telesca determined that Plaintiffs' complaint,

> alleges sufficient factual matter, accepted as true, to state a claim against the City under *Monell*. In particular, Plaintiffs' allegations that (1) the City had a policy and custom of failing to investigate police misconduct complaints or to refer such complaints to the Rochester Civilian Review Board (the "RCRB") ; (2) the City improperly permitted the RPD to control and influence the processing of police misconduct cases, rather than allowing the RCRB to function independently; and (3) the City's policy and custom of failing to properly investigate or process police misconduct complaints amounts to deliberate indifference are specific factual allegations that, if proven to be true, could potentially support the imposition of liability on the City. *See, e.g., Iqbal*, 556 U.S. at 678. Accordingly, to the extent that the City Defendants' seek dismissal of Plaintiffs' fourth cause of action in its entirety, that request is denied [and] . . . the City Defendants' argument that Plaintiffs' federal claims against the City must be dismissed as a matter of law to the extent they are based on allegedly negligent hiring, training, and supervision is without merit.

(Decision and Order at 11–12 & 14, ECF No. 17 (footnote omitted).)

The Court disagrees with City Defendants' argument that the case is frivolous, or that Plaintiff must obtain a judgment establishing individual liability before his *Monell* claim would be viable. City Defendants have not made a showing that bifurcation would meet any of the factors mentioned above. The issues under *Monell* are not significantly different from the issues concerning the individual actions of the

6

municipal actors. The issues will be tried before a jury. Plaintiff has already expended time on producing discovery pertinent to his *Monell* claim and has alleged that granting the motion to bifurcate discovery would be prejudicial to him. Finally, the documentary and testimonial evidence is likely to overlap. Accordingly, the Court denies City defendants' motion to bifurcate.

### MOTION TO COMPEL PRODUCTION OF DOCUMENTS

City Defendants oppose Plaintiffs' motion to compel arguing that,

> There is nothing about the facts and circumstances of this case that warrant a fishing expedition into the City's personnel, training and policy documents. Plaintiffs' counsel should not be permitted to collect and warehouse sensitive municipal documents on a case this thin. Despite Plaintiffs' arguments to the contrary, there can be no municipal liability where no individual liability is found.

(Reply, Oct. 3, 2019, ECF No. 54.) Plaintiff seeks several types of documentary evidence. At oral argument, defense counsel maintained that he had provided the General Orders which echoed the training documents Plaintiff requested (and contended that Plaintiffs' counsel had a library of general orders gathered from prior cases). However, defense counsel responded that he was not permitted to use any discovery from prior cases pursuant to a protective order the parties entered into in those prior cases. City Defendants have not moved for a Court protective order, but the parties have signed a stipulated protective order. (Stipulated Protective Order, Aug. 26, 2019, ECF No. 45-19.) The Court will address Plaintiffs' demands individually.

7

*Officer Disciplinary and Personnel Records*

Federal Rule of Civil Procedure 26(b) limits discovery to,

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Court finds that the records of discipline and training of the officers involved in the allegedly unconstitutional conduct here are relevant and should be produced. Not only are those records relevant to Plaintiffs' *Monell* claims, but they relate to City Defendants' affirmative defenses, particularly the second ("Defendants acted in the reasonable and good faith belief that their actions were lawful and constitutional"), the sixth ("[t]he official actions of the City of Rochester, its employees, agents or representatives, jointly and severally, constituted a good faith exercise of discretion and judgment, for which the City of Rochester and its employees, agents or representatives are immune from common-law liability"), and seventh ("Defendants' actions were reasonable and they are entitled to qualified immunity"). (City defendants' Re-Filed Answer, Aug. 20, 2019, ECF No. 44.) The Court has already determined that the case is not frivolous, and the records sought by counsel are within City Defendants' control and City Defendants have not argued that their production would be a significant expense. As to City Defendants' concern about privacy, and avoiding the warehousing of information about officers, the Court will repeat the language from the Honorable Jonathan W. Feldman's Order of September 12, 2019 (ECF No. 52):

> **2.** The parties are directed to review [Judge Feldman's] prior decisions on motions to compel personnel records. *See, e.g., Redd v. City of Rochester*, No. 15-cv-6049, 2016 WL 4702831, at *2 (W.D.N.Y. Sept. 7, 2016); *Venable v. Morabito*, No. 10-CV-6624, 2012 WL 4120397, at *1 (W.D.N.Y. Sept. 19, 2012); *Simcoe v. Gray*, No. 10-CV-6531, 2012 WL 1044505, at *3 (W.D.N.Y. Mar. 28, 2012); *Edwards v. Skelly*, No. 07-CV-6343, 2012 WL 1029492, at *1 (W.D.N.Y. Mar. 26, 2012); *Cox v. McClellan*, 174 F.R.D. 32, 34-35 (W.D.N.Y. 1997). The Court's position generally is that if the records pertain to similar conduct as is set forth in the complaint or are relevant to the defendant's truth or veracity, they must be provided.
>
> **3.** Defendants shall have until [**March 23, 2020**] to provide plaintiffs with any records not objected to. Any other records to which the defense has an objection are to be provided to the Court for *in camera* review.

(Order ¶¶2–3, Sept. 12, 2019, ECF No. 52.) Accordingly, to the extent not already done, City Defendants are directed to produce no later than **March 23, 2020**, the following:

> 8. All documents concerning the use of force incidents and unusual incidents, including, without limitation, any Civilian Review Board and Professional Standards Section files, and use of force and/or unusual incident packages, where one or more of the Officer Defendants either (a) prepared, either as participants or witnesses, the document(s) or (b) were identified as having been present or involved in the incident. Responsive documents shall include incidents that occurred from the beginning of the Officer Defendants' employment with RPD to the present.
>
> 9. The personnel files and institutional files of each of the Officer Defendants, including the pre-employment psychological screening tests and evaluations.
>
> 10. All documents concerning or reflecting interviews of the Officer Defendants by supervisors or members of the Professional Standards Section in connection with the Officer Defendants' participation in use of force incidents.
>
> 12. Copies of all Notices of Claim filed with the City of Rochester involving incidents where any of the Officer Defendants were accused of: false arrest, assault, battery, excessive force, malicious prosecution,

9

falsification of evidence, dishonest or false written or oral statements or testimony.

14. All documents reflecting the filing and disposition of any disciplinary charges that were lodged against any and all Officer Defendants regarding allegations of false arrest, assault, battery, excessive force, malicious prosecution, falsification of evidence, dishonest or false written or oral statements or testimony.

15. Every Subject Resistance Report (a) prepared by an Officer Defendant or (b) identifying an Officer Defendant as having been present during or involved in any use of force incident, where the arrestee(s) were charged with one or more of the following offenses: Resisting Arrest, Disorderly Conduct, Obstruction of Governmental Administration, Assault on a Police Officer. Responsive documents shall include incidents that occurred from the date of each Officer Defendant's

16. Produce the complete Professional Standards Section file for each Officer Defendant. Responsive documents shall include incidents that occurred from the beginning of the Officer Defendants' employment with RPD to the present.

17. Produce the complete Professional Development Section file for each Officer Defendant. Responsive documents shall include incidents that occurred from the beginning of the Officer Defendants' employment with RPD to the present.

18. Produce all records regarding whether any of the Officer Defendants have ever been placed on Force Monitoring.

19. Produce the complete Professional Standards Section file for every RPD Substantiated Force Incident, including but not limited to the following incident numbers: 13-1274, 14-0101, 15-0299, 14-0762, 14-0243, 15-0132, 15-0132, 15-0132, 15-0132, 17-0504, 16-0628, 16-0679. In responding to this request, you may limit your responses to RPD Substantiated Force Incidents from January 1, 2002 to present.

20. Produce the complete Professional Standards Section fine and CRB file for every CRB Substantiated Force Incident, including but not limited to the following incident numbers: 13-0172; 13-0385; 13-1274; 14-0101; 14-0101; 14-0101; 14-0101; 13-1140; 15-0299; 14-0404; 14-0762; 14-0762; 14-0787; 17-0027; 16-0327; 14-0243; 15-0132; 15-0132; 15-0132; 15-0132; 16-0817; 16-0817; 16-0817; 16-0817; 16-0817; 16-0817; 17-0504; 16-0628; 16-0628; 16-0679; 16-0679; 16-0679. In responding to this request, you may limit your response complaints the CRB sustained between January 1, 2002 and the present.

26. Produce each incident report and Subject Resistance Report created in connection with any arrest and/or use of force incident involving any Officer Defendant from May 23, 2010 to present, where the arrest charges included at least one of the following: Resisting Arrest, Disorderly Conduct, Obstruction of Governmental Administration, Assault on a Police Officer.

Should the Court find that City Defendants have objected to the disclosure of a voluminous amount of the above-demanded documentation, such that it would be required to conduct an *in camera* review of an impractically large amount of documentation, the Court will consider the appointment of a Discovery Master per Federal Rule of Civil Procedure 53, allocating the costs equitably between the parties, taking into consideration "the extent to which any party is more responsible than the other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3). *See, e.g., Winfield v. City of New York*, No. 15-CV-5236 (LTS) (KHP), 2018 WL 2148435 (S.D.N.Y. May 10, 2018) (magistrate judge's decision to appoint special master for discovery). Based on the congenial nature of counsel's interactions at the oral argument of this motion, however, the Court contemplates that counsel will confer and only require the Court's intervention for serious disputes regarding disclosure.

***Claim of Privilege Regarding Training Materials***

City Defendants' objection to providing responses to Plaintiffs' document demands numbers 7, 21, 22, and 25, on the basis of privilege, are overruled. In order to claim a privilege, City Defendants would have had to produce a privilege log listing the document and the privilege claimed. Fed. R. Civ. P. 26(b)(5)(A)(ii). City Defendants have not done so, nor have they provided a basis for the Court to evaluate

11

any privileges that might apply.[4] Therefore, to the extent not already done, City Defendants will produce the following documents by **March 23, 2020** to Plaintiff:

> 7. All documents issued, created, distributed and/or circulated by RPD to officers and employees between May 23, 2010 and May 23, 2016 (regardless of when the documents were issued, created, distributed and/or circulated) setting forth agency policy and procedures with respect to the use of force and the reporting of force. These documents include but are not limited to training materials provided to recruit officers at the Police Academy (before their initial patrol assignments) and to uniformed staff members who receive "on the job training" at the Academy and in the field; operation orders; directives; institutional orders; memoranda or other writings.
>
> 21. Produce copies of all manuals and training materials outlining the duties and responsibilities of the RPD's Research & Evaluation Section.
>
> 22. Produce copies of all "performance assessment manuals" that lay out the guidelines to be used by evaluating supervisors. (See GO 207 V. E. 2.).
>
> 25. Produce all RPD policy and training materials regarding the legal requirements to arrest an individual for the following crimes: resisting arrest, assault on a police officer, harassment, disorderly conduct, obstruction of governmental administration, and trespass. You may limit your response to training materials used by the RPD between January 1, 2002 and the present.

City Defendants are directed to disclose by **March 23, 2020**, records relevant to document demand 26 under the same conditions as were laid out in Judge Feldman's September 12, 2019, Order. (Order ¶¶2–3, Sept. 12, 2019, ECF No. 52.)

---

[4] For example, in response to document demand 22, the City defendants stated: "Objection. Defendants object to any disclosure of information related to internal policies and procedures regarding criminal investigations or RPD means and methods as same are privileged." (Def.s' Resp. to Pl.'s First Set of Interrogs and Req. for Produc. of Docs. at 14, Aug. 26, 2019, ECF No. 45-14.)

***RPD Training Records Regarding Obstruction of Governmental Administration, Resisting Arrest, Disorderly Conduct and/or Assault on a Police Officer, and Arrest and Use-of-Force Records from Other Incidents Involving Those Charges.***

>Plaintiffs' document request 26 seeks the following:
>
>26. Produce each incident report and Subject Resistance Report created in connection with any arrest and/or use of force incident involving any Officer Defendant from May 23, 2010 to present, where the arrest charges included at least one of the following: Resisting Arrest, Disorderly Conduct, Obstruction of Governmental Administration, Assault on a Police Officer.

(ECF No. 45-4.) City Defendants object to this request on the grounds that the records pertain to confidential personnel matters, citing New York Civil Rights Law section 50-a, and that any disclosure would require an *in camera* inspection by the Court before release. Additionally, City Defendants object that these records are irrelevant. (ECF 45-14.) The Court finds that the records are relevant to Plaintiffs' claims against City Defendants and proportional to the needs of the case. Fed. R. Civ. P. 26(b). Further, the City Defendants' privacy concerns are not the type safeguarded by the statute on which they rely.

>Most information requested by civil rights plaintiffs in these lawsuits deals with professional personnel records, such as prior involvement in disciplinary proceedings or citizen complaints filed against the officers. The privacy interest in this kind of professional record is not substantial, because it is not the kind of "highly personal" information warranting constitutional safeguard.

*King v. Conde*, 121 F.R.D. 180, 191 (E.D.N.Y. 1988). As this Court observed in 1988:

>There is substantial evidence that the New York Legislature did not, when it enacted § 50–a, intend to create an evidentiary privilege in the conventional sense of a "protect[ion] from forced disclosure on the witness stand." *Black's Law Dictionary* 1078 (5th ed. 1979).

*Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y. 1988). "It is undisputed that under federal law, New York Civil Rights Law § 50-a does not prohibit discovery of police personnel documents." *Adamson v. City of Buffalo*, No. 11CV663A, 2013 U.S. Dist. LEXIS 31849, at *3 (W.D.N.Y. Mar. 5, 2013). Moreover, the New York Court of Appeals has not held that section 50-a prohibits disclosure, only that, "if the court then determines that the records contain matter that is relevant and material in the action, such portions may be disclosed to the person who has made the request (Civil Rights Law, s 50-a, subds. 2, 3)." *People v. Gissendanner*, 48 N.Y.2d 543, 551, 399 N.E.2d 924, 929 (1979).

Consequently, City Defendants are directed to disclose by **March 23, 2020**, records relevant to document demand 26 under the same conditions as were laid out in Judge Feldman's September 12, 2019, Order. (Order ¶¶2–3, Sept. 12, 2019, ECF No. 52.)

***Records Related to the RPD's Performance Evaluation and Tracking Systems***

Document demands 17, 18, 21, 22, 23, and 24, seek the following:

17. Produce the complete Professional Development Section file for each Officer Defendant. Responsive documents shall include incidents that occurred from the beginning of the Officer Defendants' employment with RPD to the present.

18. Produce all records regarding whether any of the Officer Defendants have ever been placed on Force Monitoring.

21. Produce copies of all manuals and training materials outlining the duties and responsibilities of the RPD's Research & Evaluation Section.

22. Produce copies of all "performance assessment manuals" that lay out the guidelines to be used by evaluating supervisors. (See GO 207 V. E. 2.).

23. Produce all documents that outline the RPD's policies regarding "de-escalation."

24. Produce all records related to any "force monitoring" systems implemented or utilized by the RPD for the purpose of monitoring or tracking of officers involved in use-of-force incidents and/or who have been repeatedly accused of using unnecessary or excessive force.

(ECF No. 45-4.)

City Defendants object to production of these document in part because "complaints regarding third parties are not relevant to the particular act or omission of the case at bar." (ECF No. 45-14.) City Defendants cite *Crenshaw v. Herbert*, 409 Fed. App'x 428 (2d Cir. 2011) in support of this contention. The Second Circuit's holding in *Crenshaw* was simply that, "the district court did not abuse its discretion by denying Crenshaw's motion to compel production of Bartkowiak's personnel file. The district court properly relied on defense counsel's affirmation that Bartkowiak's file contained no relevant disciplinary records." *Crenshaw v. Herbert*, 409 F. App'x at 430. City Defendants have made a similar claim here: "In the present case, none of the named Defendants have any *substantiated* claims of excessive force in their personnel history." (ECF No. 47-8 at 3 (emphasis added).)

In a similar case, the Eastern District held: "except for reasonable redactions of names and addresses to protect privacy or informer sources, plaintiffs in federal civil rights actions are presumptively entitled to recollections as well as documents on prior complaints and police history." *King v. Conde*, 121 F.R.D. 180, 198 (E.D.N.Y. 1988); *accord Benitez v. Lopez*, 372 F. Supp. 3d 84, 87–88 (E.D.N.Y. 2018) ("the officers' conduct need not be subject to a *Monell* claim for the disciplinary files to be discoverable"). In *Adamson v. City of Buffalo*, No. 11CV663A, 2013 U.S. Dist. LEXIS

31849, at *4 (W.D.N.Y. Mar. 5, 2013), Judge Scott determine that it was "unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence." However, in this case, Plaintiff supplied a study which showed that in Chicago, "between 1 and 5 percent of all police officers are involved in most of the city's misconduct cases." (Casaccia 1067–1133, Rozema, K., and M. Schanzenbach, *Forthcoming, Good cop, bad cop: Using civilian allegations to predict police misconduct*, American Economic Journal: Economic Policy (August 2018) ("Rozema") *attached as* Ex. KK, ECF No. 45-38.) Regarding the issue of substantiated versus unsubstantiated complaint, the study concluded, "just over half of all civil allegations in Chicago were dismissed for failing to have a sworn affidavit from the accuser. Schanzenbach and Rozema find that allegations without affidavits are as strong a predictor of misconduct as those with affidavits, suggesting the affidavit requirement should be dropped." (*Id.*) That study involved a review of 50,000 civilian allegations of police misconduct and found that civilian misconduct allegations were an accurate predictor of whether a police officer would repeatedly commit serious misconduct in the future. It concluded: "The worst 1 percent of officers, as measured by civilian allegations, generate almost five times the number of payouts and four times the total damage payouts in civil rights litigation." (Rozema at 1073, *attached as* Ex. LL, ECF No. 45-39.)

The Court finds that the material sought is within the scope of Fed. R. Civ. P. 26(b), and directs its disclosure by **March 23, 2020**, subject to the same provisions as

contained in Judge Feldman's September 12, 2019, Order. (Order ¶¶2–3, Sept. 12, 2019, ECF No. 52.)

### RULE 30(B)(6) WITNESS

Plaintiff seeks an Order compelling the City Defendants to designate a Fed. R. Civ. P. 30(b)(6) witness. That Rule states:

> **(6)** *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6). Plaintiff contends that the City Defendants "have not acknowledged the Rule 30(b)(6) deposition notice or responded to Plaintiffs' numerous communications requesting that the City designate a 30(b)(6) witness and schedule the deposition." (ECF No. 45-2 at 25.)

The Court has searched the documents filed in opposition to Plaintiffs' pending motions (ECF No. 47-8 and 54) and found no discussion of Rule 30(b)(6). Consequently, the Court directs the City to comply with Fed. R. Civ. P. 30(b)(6) by **March 9, 2020**.

### MOTION TO IMPOSE SANCTIONS

In his Decision and Order denying in part City Defendants' motion to dismiss the complaint, the Honorable Michael A. Telesca wrote:

17

> To the extent any discovery remains outstanding, the parties shall exchange said discovery, in compliance with the Federal Rules of Civil Procedure. If any discovery disputes arise, the parties should direct any motion practice to Judge Feldman. . . . All discovery must be completed by September 30, 2019. After the close of discovery, the Court will entertain dispositive motions, which must be filed by October 31, 2019.

(Decision and Order, Aug. 14, 2019, ECF No. 43.) Plaintiff asks the Court to strike City Defendants' affirmative defenses as sanctions for their failure to comply with Rule 26(a) and their "refusal to produce clearly relevant materials demanded by Plaintiff." (ECF No. 45-2 at 26.) As outlined above, City Defendants refused to provide any discovery they deemed relevant only to a *Monell* claim until the Court intervened. Plaintiffs' counsel lays out the history of exchanges between the parties starting in March 2019, and continuing until almost the present time. Without seeking a protective order from the Court, counsel for the City Defendants informed Plaintiffs' counsel, "I've said multiple times I will not turn over the discovery you've requested without first providing same to the Court for review." (ECF No. 45-33.) As stated above, City Defendants never provided a privilege log despite claiming that much of the material sought was privileged.

The relief sought by Plaintiff, striking City Defendants' affirmative defenses, is drastic. Although defense counsel has not been forthcoming and has not strictly complied with discovery requirements, he has not evaded, but has maintained that the material was not relevant, or was privileged. Plaintiff properly filed a motion to compel and the Court has ordered disclosure. The Court believes the proper sanction is to direct payment of the costs of bringing the motion to compel and engaging in two appearances in relation to it. Accordingly, Plaintiffs' counsel is directed to file a

18

motion for costs, including reasonable attorney's fees, associated with his motion to compel and preparation of the motion for fees.

## MODIFICATION OF THE SCHEDULING ORDER

This portion of Plaintiffs' motion is now moot. In an apparent spirit of cooperation, the parties jointly agreed to extend fact discovery to March 31, 2020, and expert discovery to May 15, 2020. (ECF No. 68.) In view of the Court's directive that further discovery be produced by March 23, 2020, the Court will entertain a further extension of discovery deadlines upon application of either party.

IT IS SO ORDERED,

DATED:    March 3, 2020
               Rochester, New York

                                          <u>/s/ Mark W. Pedersen</u>
                                          MARK W. PEDERSEN
                                          United States Magistrate Judge